# Mims v. Cobbs.

### Bill in Equity to Enforce Vendor's Lien.

1. *Vendor and purchaser; vendor without title can not enforce his lien.* W. purchased land, paying part of the purchase money in cash, and for the balance gave his notes and assumed the payment of notes given by his vendor for the purchase money of the same lands. Without receiving a deed to the said lands, W. made a parol sale of certain undivided interests in the lands to others, who paid partly cash for the interests and for the balance of the purchase money therefor assumed to pay their proportionate share of the purchase money notes given both by W. and his vendor. Thereafter W. and his vendees of the undivided interests sold said lands, and gave to the purchaser, who paid therefor partly in cash, and for the balance of the purchase money executed his notes, a bond to convey title upon payment of his notes. Said last notes not having been paid, and W. having died intestate in the meantime, his administrator filed a bill in the nature of a bill for specific performance to enforce a vendor's lien upon said lands and to have them sold to pay, first, the amounts due upon the notes given by W.'s vendor to the original owner, and upon W.'s notes to his immediate vendor, and then to have the balance applied to the payment of the notes of the last purchaser. *Held:* that the bill was without equity, since complainant's intestate and his co-vendors, being without any title, were unable to convey title to their vendee, and the enforcement of the payment of his notes by sale of the land would preclude the last purchaser from all defense

37

[Mims v. Cobbs.]

to any action brought against him to enforce his personal liability on his notes for the purchase money, which he would be subject to if the proceeds of a sale under a decree were only sufficient to pay the prior outstanding notes, and this, too, without the possibility of ever obtaining the land he had bargained for.

2. *Right of junior incumbrancer; can not go into equity to enforce senior incumbrance.*—A junior incumbrancer can not go into equity to enforce both the senior incumbrance and his own for the payment, first, of the senior demand and, then, of his own; his remedy being first to redeem the land from the senior incumbrance, and then proceed to enforce his lien upon the land for his reimbursement of the redemption money and the satisfaction of his own demand.

APPEAL from the City Court of Birmingham, in Equity.

Heard before the Hon. W. W. WILKERSON.

The facts of the case are sufficiently stated in the opinion.

MATTHEWS & WHITESIDE, for appellants.—The bill is in the nature of a bill for specific performance, and shows on its face, that neither complainant nor the heirs of his intestate, are able to convey a title free from incumbrance to said lot, but are relying upon getting a decree to sell, and upon selling it to raise money with which to discharge the incumbrances on it, so as to enable Mims' vendors to make a deed in compliance with their bond for title. Complainant is in no condition to perform that agreement, and it is a universal rule of equity that he who asks for a specific performance must be in a condition to perform himself.—*Morgan v. Morgan*, 2 Wheat. 290; Waterman on Specif. Perf. of Contracts, 86, § 62; *Judson v. Wass*, 11 Johns. Rep. 585; *Linn v. McLean*, 80 Ala. 368. That the principle can not apply in this case, as shown by the facts set forth in the bill, see *People v. Stockbrokers B. Co.*, 92 N. Y. 105; *Grady v. Ward*, 20 Barb. 543; 2 Beach on Mod. Eq. Jur. 612.

Before equity will require Mims to pay the purchase money, it must be apparent that upon such payment he would get such title as his vendors contracted to make him, "according to the terms of the contract."—*Linn v. McLean*, 80 Ala. 368; 3 Pom. Eq. Jur., § 1407; *Hussey v. Roquemore*, 27 Ala. 282; Waterman on Specif. Perf. of Contracts, p. 710, § 504, and § 147, note 4; 5 Waites Act. & Def., 804.

[Mims v. Cobbs.]

Mims is entitled to a rescission, because none of his vendors had such an interest as they proposed to sell him, towit, an absolute fee simple title. The outstanding mortgages greatly diminished their interest, and effected the nature of their estate.—5 Wait's Act. & Def., 778, § 5; *Griel v. Lomax*, 86 Ala. 136; *Cooper v. Singleton*, 70 Amer. Dec. 333 and note; Waterman on Spec. Perf. 554, § 414. The failure to disclose the incumbrances on the lot as it was one created by Westbrook, and as Mims never did go into possession, was a fraud authorizing the rescission—*Campbell v. Whittingham*, 20 Amer. Dec. 241; *Cullum v. Branch Bank*, 4 Ala. 35; 2 Add. on Contracts, § 533; *Strong v. Waddell*, 56 Ala. 471.

WEBB & TILLMAN, *contra.*—There is nothing in the pleadings to show that Mims did not go into possession when he purchased. If he did not, it was his own fault, and because he refused to take possession. It is not shown that either Phelan or Austin as mortgagees were in possession. The presumption is, until the contrary is averred, that Mims (as owner after he purchased from Westbrook) was in possession, and as vendee in possession "he can not defend except for fraud, or, at least, by showing that he bought nothing and never could get title.—*Mathis v. T. & C. R. R. Co.*, 83 Ala. 415 and cases cited.

There are not, strictly speaking, defects in the title but incumbrances on the land, and when paid off, as they will be, out of the money to be paid by Mims (if he would only pay what he owes) there will neither be defect in or incumbrance on the title which Mims would get. It is not necessary for a vendor who files a bill, to aver he is able to make a good title, or to offer to do so. *Davis v. Smith*, 88 Ala. 596; *Bogan v. Hamilton*, 90 Ala. 454; *Munford v. Pearce*, 70 Ala. 452.

Our statute, section 1871 of the Code, has made express provision for just such a case, and provides that Westbrook and Torrey, having died, their respective personal representatives may execute the conveyance demanded by the bond for titles. This statute being in force when the bond for title was given, the contract will be read, not only in the light of the statute, but as if the statute were incorporated in it, in the nature of a

proviso, viz., "If either of the makers of this bond shall die before the deed is executed, then that such deed shall be executed by the personal representative of such decedent." Independent, however, of such statute, the equity of the bill by the administrator of Westbrook is established.—Fry on Specific Performance, § 115; *Baden v. Countess*, 2 Vern. 213 ; 22 Amer. & Eng. Encyc. of Law, 934 and cases cited ; *Hays v. Hall*, 4 Port. 374.

HEAD, J.—The bill is to enforce the vendor's lien on land. It is in the nature of a bill for specific performance. The facts, as shown by the bill as amended, are, that Ellis Phelan owned the lot in question, and on the 25th day of November, 1886, sold and conveyed it by deed to D. W. Austin, who executed to Phelan his four notes for the purchase money, each for the sum of $300, and payable, with interest, one, two, three and four years after date, respectively. On February 1, 1887, Austin sold the lot to John C. Westbrook, at the price of $2,100, of which a part was paid in cash ; and, for the balance, Westbrook assumed, and agreed to pay, the said four notes given by Austin to Phelan ; and, besides, executed to Austin his two notes, each for $150, payable, with interest, one and two years after date, respectively; and to secure the payment of said four assumed notes and said two other notes, he executed to Austin a mortgage on said lot. It does not appear that Austin made any deed to Westbrook. After this sale, Westbrook, by parol, agreed with Samuel Torrey and S. J. Darby, acting for himself and his brother, J. I. Darby, that the said Torrey and the two Darbys should each purchase and acquire an undivided one-fourth interest in said lot, by each paying one-fourth of the cash payment which Westbrook had made to Austin, and assuming to pay one-fourth of the deferred payments owing to Phelan and Austin, viz., the said four notes to Phelan, assumed by Westbrook, and the said two notes for $150, each, given to Austin by Westbrook. Afterwards, said J. I. Darby declined to carry out the agreement, on his part, and thereupon the said S. J. Darby assumed the obligations of his brother, and paid two-fourths of the said sum which was to be paid to Westbrook instead of one-fourth ; so that, by this arrangement Torrey purchased and acquired one-fourth interest in the

lot, and S. J. Darby one-half interest therein.  Prior to this last arrangement, however, to-wit, on the 3d day of February, 1887, Westbrook, Torrey and S. J. Darby— the latter signing and acting for himself and his brother, said J. I. Darby—undertook and contracted to sell said lot to the defendant, J. M. Mims (who is appellant here), at the price of $3,100 of which $800, was to be, and was, paid in cash by said Mims to said Westbrook, Torrey and Darby ; and, for the balance, he executed his two prom- issory notes, each for $1,150 payable to said Westbrook, Torrey and S. J. Darby and J. I. Darby, with interest, at the Berney National Bank, one and two years after date, respectively ; and as the bill states, said Westbrook, Torrey and S. J. Darby executed and delivered to said Mims a bond for title to convey the title of said lot to said Mims upon the payment by him of said notes ; but the bond itself, which is made an exhibit to the bill, shows it was made by said three parties and also by "J. I. Darby, per S. J. Darby, Att'y."  No part of said notes has ever been paid.  The bill avers that the said J. I. Darby, not having contracted in writing for the purchase of any interest in said lot, and not having paid any of the purchase money, is not entitled to any interest in said notes, or the proceeds thereof ; that for the amount of said notes, a lien exists upon said lot in favor of the payees thereof, excepting the said J. I. Darby, who are alleged to be the real owners thereof, and that the com- plainant, administrator of Westbrook, is entitled to have said lien enforced, and the said lot sold, by the decree of the court, to pay *first*, the costs of the suit ; *second*, the amount due Phelan ; *third*, the amount due Austin, and the balance applied to the payment of the indebtedness of Mims upon his said notes.  Westbrook died in Au- gust, 1888.    There was an administration of his estate by his widow, who caused the estate to be judicially de- clared insolvent by the probate court, and, afterwards, the complainant, Jas. B. Cobbs became administrator *de bonis non.*  A large number of claims were filed against the insolvent estate, and no personal property has come to the hands of the complainant with which to pay said debts, and he knows of none, except the money sought to be recovered in this suit.   The bill is filed by the said administrator to enforce the said alleged lien, for the notes due by Mims, and makes as defendants the said Mims,

[Mims v. Cobbs.]

all the heirs at law of the deceased Westbrook, the said Ellis Phelan, D. W. Austin. Samuel Torrey, S. J. Darby and J. I. Darby; and prays for the sale of the lot for the payment and discharge of all said liens, according to their priorities, as herein indicated. The defendant, Mims, demurred to the bill and his demurrer was overruled, and this appeal is prosecuted by him from that ruling.

We think it is plain that the bill is without equity, and subject to several grounds of demurrer which were overruled. As we have said, it is a bill in the nature of a bill for specific performance, by vendor against vendee. The facts stated show that the complainant and his intestate's co-vendors have no title whatever to the land, and it is not pretended or proposed that they can or will, at any time, obtain and convey to their vendee any title whatever. It is, therefore, most obvious upon reason, and settled by all authority upon the subject, that the vendee Mims, who has never taken possession of the land, nor enjoyed any benefit of the purchase, is under no legal duty or obligation to pay the agreed purchase money to complainant and his intestate's co-vendors; yet this bill seeks by the decree of the chancery court, to judicially establish his liability to pay the same, and the amount thereof, and for the payment thereof, to enforce their alleged lien on the land; thus precluding Mims from all defense against any action which might be taken or brought against him to enforce his personal liability for the purchase money. See Code, section 3605. Thus it is, if the relief sought by the bill be granted, and the land, on sale under decree, should be exhausted in the payment of the prior incumbrances, leaving the demand of the complainant and the co-vendors unsatisfied, Mims would be without the possibility of obtaining the land he had bargained for, and yet bound, beyond the power of any defense, to pay to his vendors the purchase money he had agreed to pay. Equity cannot lend its aid to the accomplishment of such ends.

Again, it is a principle well settled in this court, under our recent decisions, that a junior incumbrancer will not be permitted to go into equity to enforce the incumbrance of the senior and his own, for the payment first, of the demand of the senior, and, next, his own. His remedy is to redeem the land from the senior incumbrance, and then proceed to enforce his lien upon the land for his reimbursement of

[Mitchell v. Capital City Insurance Co.]

the redemption money, and the satisfaction of his own demand. Nothing of this kind has been done, or is proposed to be done by this bill.—*Kelly v. Longshore,* 78 Ala. 203; *Ware v. Hamilton-Brown Shoe Co.,* 92 Ala. 145 (150); *Bingham v. Vandegrift,* 93 Ala. 283.

Upon these considerations, without noticing other questions raised by the demurrer, we hold that the city court erred in overruling the demurrer, and a decree will be here rendered reversing its decretal order sustaining the demurrer, and remanding the cause.

Reversed, rendered and remanded.