(76 South. 381)

## ALABAMA, T. & N. RY. et al. v. TOLMAN.
### (1 Div. 972.)

(Supreme Court of Alabama.   July 2, 1917.)

1. APPEAL AND ERROR ⟐⟐242(3)—PRESERVATION OF GROUNDS OF REVIEW—DEMURRER—ABSENCE OF RULING.

Where the chancellor did not rule on the demurrers and his failure so to do is not so presented that it can be reviewed, the questions raised by demurrer will not be considered except in so far as the averments of the bill in connection with the proof justifies the relief awarded.

2. CORPORATIONS ⟐⟐547(1)—MERGER CORPORATION—"CREDITOR."

Where complainant is a "creditor" of two of the merging corporations with a prior lien as to some assets which went into the merged corporation, he is a creditor of the latter within Code 1907, § 3509, making the assets of insolvent corporations constitute a trust fund for the payment of creditors.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

3. CORPORATIONS ⟐⟐586—"MERGER"—"CONSOLIDATION."

Under Code 1907, §§ 3502–3508, providing for the merger or consolidation of corporations, "merger" is the absorption of a thing of lesser importance by a greater, whereby the lessor ceases to exist but the greater is not thereby increased, while a "consolidation" takes place when two or more corporations are extinguished and by the same process a new one is created, taking over the assets and assuming the liabilities of those passing out of existence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merger; Consolidation.]

4. CORPORATIONS ⟐⟐591 — MERGED OR CONSOLIDATED CORPORATIONS—LIABILITIES FOR DEBTS.

Under Code 1907, § 3509, providing that the assets of insolvent corporations constitute a trust fund for the payment of creditors which may be marshaled and administered in courts of equity, a merger or consolidated corporation may be sued for the debts and liabilities of the original corporations.

5. CORPORATIONS ⟐⟐591 — SUIT AGAINST MERGED CORPORATIONS — PARTIES DEFENDANT.

Consolidated and merging corporations could be sued together, where it was sought to administer the assets of the original companies, only in so far as their assets had gone into the merged corporation.

6. CORPORATIONS ⟐⟐553(3) — RECEIVERS — GROUNDS—INSOLVENCY.

On a bill by a creditor of a merging corporation in behalf of himself and other creditors against a consolidated corporation, alleging insolvency, and asking relief to the extent that the assets of the merging corporation became a trust fund, subject to be marshaled and distributed under Code 1907, § 3509, application was made for appointment of a receiver pendente lite. Pending a continuance of the cause, a bill was filed in the federal court against the corporation and a receiver appointed. The evidence on the hearing thereafter in the state court tended to establish the insolvency as alleged. Held, that a receiver was properly appointed.

7. COURTS ⟐⟐493(3)—PRIORITY OF JURISDICTION—FEDERAL AND STATE COURTS.

As the state court first acquired jurisdiction, its rights to appoint a receiver were not impaired by the appointment of a receiver by the federal court.

8. RECEIVERS ⟐⟐72 — RECEIVER OF STATE COURT—INTERVENTION IN FEDERAL COURT.

In such case the chancellor properly directed the receiver to intervene in the suit in the federal court for the purpose of having that court discharge its receiver and direct the custody and control of the property to be delivered to the receiver of the state court.

9. CORPORATIONS ⟐⟐556—CREDITORS' BILL—DEBTS EVIDENCED BY TRUST DEEDS.

That the trust deeds securing complainant's debts are to the effect that a sale of the mortgaged property shall operate as a full satisfaction of the indebtedness secured, by the trust deed, cannot defeat a bill and application for receiver pendente lite by complainant in behalf of himself and other creditors, not seeking any relief personally against the original corporations, or the consolidated corporation, but only to have the court take possession of the mortgaged property and conserve it.

10. APPEAL AND ERROR ⟐⟐839(1)—QUESTIONS CONSIDERED—MERITS OF BILL IN FEDERAL COURT.

Where pending a creditors' suit against a consolidated corporation in the state court, a bill was presented to a federal court which appointed a receiver, on appeal from a decision of the state court thereafter appointing a receiver, the merits or defects of the bill filed in the federal court will not be decided where it was within the lis pendens of the suit in the state court.

Appeal from Circuit Court, Mobile County; Thomas H. Smith, Judge.

Bill by D. H. Tolman against the Alabama, Tennessee & Northern Railway and others. From an order appointing a receiver, respondents appeal. Affirmed.

Appellee, as a creditor, in behalf of himself and other creditors, filed his bill against the Alabama, Tennessee & Northern Railway, a domestic railroad corporation formed by a consolidation or merger of three other corporations. Two of such constituents were railroad corporations, and the other was a terminal company, probably intended to form a part or adjunct of the line of railroads owned and operated by the railroad corporations. These three merging or consolidating corporations, together with many other corporations and individuals, were made parties defendant, some as creditors of one or more of the merged or merger corporations, and some as trustees to whom the legal title of parts of the railroad and corporate property had been conveyed, to secure the payment of certain bonded indebtedness of the merged and merger corporations. Some of these deeds of trust were made by the merging corporations before the merger, and others, by the merger corporation thereafter. Others were made parties defendant, because of vendors' liens which they held upon property conveyed to the merged or merger corporations.

The main equity of the complainant's bill is intended, and made, to rest upon facts to bring the bill within the influence of section 3509 of the Code, which reads as follows:

"The assets of insolvent corporations constitute a trust fund for the payment of the creditors of such corporations, which may be marshaled and administered in courts of equity in this state."

---

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

200 ALA.—29

In aid of the suit, the appointment of a receiver of all the property of the merger corporation, which is alleged to be insolvent, is asked, the receivership sought being one pendente lite.

Demurrers by one or more of the respondents were interposed to the bill, and the application for the appointment of a receiver was resisted. The cause was continued in order that the respondents might ascertain the real facts touching the insolvency vel non of the merger corporation. Pending this continuance, one of the respondents, a trustee of one of the deeds of trust, and another creditor of the merged corporations, filed a bill in the federal court, at Mobile, against the merged corporations, seeking the appointment of a receiver of the respondent corporations by the federal court. This bill in terms denied the insolvency of the corporations, but sought the receivership on other grounds, and partly because of the pendency, in the state chancery court at Mobile, of this suit by appellee; and, as amended, sought a foreclosure of the deed of trust of which one of the complainants was trustee. This bill in the federal court was confessed by the defendant, the merger corporation, and receivers were appointed by the federal court before the bill in the state court ever reached a hearing on the demurrers, or on the application to appoint a receiver. When a hearing was thereafter had in the state court, the appointment of receivers by the federal court was assigned as a ground for not appointing a receiver by the state court, together with various other grounds. The state court, without passing finally on the demurrers to the bill, appointed a receiver in accordance with the prayer of the bill, and directed its receiver to intervene in the proceeding in the federal court, and to have that court direct its receivers to turn over the property and assets of the merger corporation to the receiver appointed by the state court. From this order by the state court appointing a receiver, the respondent appeals, and here assigns appropriate grounds for error.

There was also an application made to the state court, and to the federal court or its receivers, that such receivers turn over the books and papers of the merger corporation to the state court or its receiver, for inspection and examination. This application was unavailing to complainant, and its consideration is not of importance on this appeal by the respondents, who were not injured by, and cannot complain of, that action.

It appears that each of the three merging corporations owned separate property and owed separate debts, evidenced by notes, bonds, etc., and secured by deeds of trust, and by vendors' liens in some instances; and each therefore had separate creditors, who had prior liens upon parts of the property merged. It is not made to distinctly appear whether any one, or all three of the merging corporations were insolvent before the merger, and there is no attempt to have any one of them declared insolvent, and its assets administered by the chancery court, otherwise than in so far as it has become a part of the merger corporation.

The complainant is shown to be a creditor of two of the merging corporations; and his debt was secured by deeds of trust constituting a lien upon parts of the property and assets which went into the capital stock of the merger corporation, but went in, of course, charged with the lien.

The complainants who filed the bill in the federal court were also creditors of the merger and merging corporations, and their debts were likewise secured by deeds of trust on parts of the property constituting the capital stock of the merger corporation; but their liens were secondary to other prior and paramount liens on the same property. Their liens were not first and prior liens, as were some, at least, of appellee's liens; appellee's bill being that filed in the state court.

Armbrecht, McMillan & Caffey and Gregory L. Smith, all of Mobile, for appellants. Stevens, McCorvey & McLeod, of Mobile, for appellee.

MAYFIELD, J. The only question presented by this appeal is the correctness and propriety of the order and decree of the chancellor in appointing a receiver under the circumstances adverted to.

[1] We cannot now pass upon the questions raised by demurrer to the bill, except in so far as the averments of the bill, in connection with the proof, tend to authorize or justify the appointment of the receiver. This for the reason that the chancellor did not rule or decree on the demurrers. Nor is his failure to so pass upon them so presented that we can review the question therein involved. This question can be here insisted upon only in the way of argument touching the propriety of appointing the receiver, before passing upon the sufficiency of the bill as raised by the demurrer.

It is urged by appellants that it was error to appoint the receiver when and as the chancellor did appoint him. The argument of counsel for appellants to show error, and the assigned reasons which are contended to show error, may be briefly summarized as follows:

(1) That complainant, appellee here, is not shown to be a creditor of the consolidated corporation which is alleged to be insolvent and whose assets are sought to be marshaled and distributed.

(2) That the court has no power to marshal the assets of four corporations in one suit.

(3) That it is not alleged, even generally, that either of the merged corporations was insolvent, but only so alleged that the merger corporation was insolvent.

(4) That notwithstanding the consolida-

tion of the three corporations into one, as authorized by our statutes, each of them continued and continues to exist, for the purpose and to the extent that it may be proceeded against separately, by its creditors, under section 3509 of the Code, and that for this reason the various liens of the various creditors of the several corporations cannot all be dealt with in one suit, by the creditors of one of the merging corporations.

(5) That the deeds of trust securing the payment of the debts of some of the corporations, especially the debts of complainant evidenced by the bonds of one of the corporations, provide the only and exclusive method of enforcing payment—that is, by a sale of the property conveyed to the trustee—and that there is therefore no right to a personal action against the merging or the merger corporations, but that the property conveyed by the deed of trust must be sold by the trustee and the proceeds of the sale applied to the payment of the debts secured, and that, if they be insufficient to pay in full, the remainder of the debt is discharged, being not in any way enforceable. That this provision is written in the deeds of trust and that it is therefore shown by the complainant's bill.

(6) That no necessity is shown by the bill or the proof for the appointment of a receiver.

(7) That if the averments of the bill and the proof would otherwise authorize the appointment of a receiver, the necessity and propriety of making an appointment was removed when the federal court appointed receivers of the same properties of the same corporation.

(8) That the state court's prior right to appoint a receiver should not even be presented to the federal court until the merits and the equity of complainant's case has been tested and adjudicated, and that then its priority of right to appoint a receiver and to marshal the assets should be raised by appellee, or a party to the suit in the state court, and not by the receiver of the state court. That the practice is unheard of, of having the receiver of one court apply to another court to remove its receiver and deliver the property so received to the applying receiver, to be administered in the court appointing him.

We cannot agree with counsel for appellants in any of their contentions going to show that the chancellor erred in appointing a receiver in this case.

There can be no doubt that section 3509 of the Code, above set out, authorizes the filing of a creditors' bill, like the one in question, against a corporation that has become insolvent within the sense in which that word is used in the statute. The bill in this case alleges that the merger corporation is insolvent within the meaning of the statute; that is, insolvent to the extent that its assets have become a trust fund for the benefit of its creditors, subject to be marshaled and

administered by a court of equity. It may be that the facts or the details might be averred more minutely and more particularly, to show that the corporation is insolvent to the extent necessary to bring it within the operation of the statute, which says that the assets then become a trust fund for the payment of the claims of the insolvent's creditors; but we are not now dealing with the sufficiency of the averment in matters of detail, or with allegations which are too general. That question is not now before us, because not passed upon by the chancellor. We now pass only upon the equity of the bill to authorize the appointment of a receiver pendente lite. We must not be understood, however, as holding or intimating that the averments as to insolvency would not be sufficient, even if tested by demurrer assigning appropriate grounds. This court has held that insolvency can be averred in very general terms, as it relates to the pecuniary condition of a party; that while it may be, in a sense, a conclusion to be drawn from other facts, yet it is also in a sense a collective fact, which may be averred, and deposed to; that the mere statement that a party is insolvent may, in certain cases, present and involve other facts which go to make up the condition of insolvency. It is very true of this word "insolvent," as it is of other words, that the meaning or sense in which it is used is not the same in all statutes or in all cases. Its meaning is sometimes more restricted or limited than at others. Coal City Co. v. Hazard Co., 108 Ala. 223, 19 South. 392; Corey v. Wadsworth, 99 Ala. 78, 11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29; O'Bear Jewelry Co. v. Volfer, 106 Ala. 205, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31; City Bank v. Leonard, 168 Ala. 404, 53 South. 71; Cassells Mills v. Bank, 187 Ala. 327, 65 South. 820; Warren v. Kilgroe, 176 Ala. 476, 478, 58 South. 432; Thompson Corp. § 6127.

It is very true that if the defendant corporation was not insolvent within the meaning of that word as used in the statute in question, the assets of the corporation were not a trust fund, and this bill could not be maintained; and no receiver should be appointed, even pendente lite, with this averment, and proof thereof, and a hearing upon which the question is properly put in issue. Insolvency of the corporation, within the meaning of that term in the statute, is certainly the sine qua non of the equity of a bill like this.

As we have said, however, the bill did allege insolvency to the extent, or in the sense, that the assets become a trust fund subject to be marshaled and distributed, the allegation being practically in the language of the statute; and there was proof, on the hearing, tending to support the allegation.

[2] We cannot agree with counsel that the bill fails to show that appellee, complainant

below, is a creditor of the merger corporation, or that he is not such a creditor, under the undisputed facts, or the facts as contended for by appellant. It is conceded that he is a creditor of two of the merging corporations, with a prior lien as to some assets which went into the merger corporation.

It is not denied that the merger or consolidation of the corporation was effected under our statutes providing for such combinations; and no complaint is made against the validity or sufficiency of the proceeding to merge or consolidate under the statutes. These statutes are now embraced within sections 3502 to 3508 of the Code. Section 3502 authorizes in general terms the consolidation or merger of certain corporations. Section 3503 specifies the mode or process of consolidating or merging. Section 3504 fixes the duties, powers, and liabilities of the consolidated or merger corporation so formed, with the result that it possesses all the powers and privileges, and is subjected to all the duties and liabilities, of each of the consolidating or merging corporations. Section 3505 provides that all the title, rights, privileges, and franchises, in and to all property of every kind, which the merging or consolidating corporations had and possessed, vest in the merger or consolidated corporation, and that such rights and titles thereto shall not be in any manner impaired by reason of such consolidation. Section 3506 preserves the rights and liens of all creditors, as to the property of the merging or consolidating corporations, and provides that such corporations shall be deemed to exist, in order to preserve such rights and liens of such creditors after the property passes to the merger corporation. It also expressly provides that all debts, liabilities, and duties, of each of the original corporations shall attach to the consolidated or merger corporation, and may thereafter be enforced against it, in the same manner and to the same extent as if such debts, duties, and liabilities had been incurred or contracted by the consolidated or merger corporation.

Thus the case made by this bill is clearly brought within both the letter and the spirit of the statute making the complainant a creditor of the merger or consolidated corporation, as if his debt had been contracted with it. The statute also clearly makes the assets and property of each and all the former corporations the property of the merger corporation, and makes the several funds or assets one fund with which the newly formed corporation can deal, just as any one or all of the consolidating corporations could theretofore deal therewith.

[3] While there is a technical difference between a merger and a consolidation of corporations, our statutes authorize and provide for both. A merger is the absorption of a thing of lesser importance, by a greater, whereby the lesser ceases to exist, but the greater is not thereby increased. A consoli-

dation takes place when two or more corporations are extinguished, and by the same process a new one is created, taking over the assets and assuming the liabilities of those passing out of existence. The consolidation of corporations, under statutes like ours, effects the dissolution of the original bodies, except for certain purposes specified, and the creation of a new one, which derives its rights and powers by virtue of the statutes of the state, and likewise its duties and liabilities; all such liabilities and powers being the same as those possessed by, or imposed upon, the former corporations. The consolidation, of course, renders the original corporations unable to meet their obligations, and the merger corporation is by law required to assume and to discharge them. While the merging corporations continue to exist for certain purposes, those purposes are limited by the statute. This is necessarily shown by the language of section 3506 of the Code, which reads:

"Rights of creditors and all liens upon the property of any of the said former corporations shall be preserved unimpaired, and the former corporations may be deemed to continue in existence in order to preserve the same; and all debts, liabilities, and duties of each of the said former corporations shall thenceforth attach to the consolidated corporation, and may be enforced against it to the same extent as if said debts, duties, and liabilities had been incurred or contracted by it."

[4] There is no escaping the conclusion that by virtue of our statutes the merger or consolidated corporation may be sued for the debts and liabilities of the former corporations; and if it be said that the latter can and should be sued also, in order to preserve the rights and liens of their creditors, the answer is, they are so sued in this case, with the consolidated company, and we see no reason why the rights and liens of the creditors of the consolidating corporations cannot be preserved by the chancery court, if the assets of the merger corporation are marshaled and administered therein.

[5] It was held by this court in the case of Southern Steel Co. v. Hopkins, 157 Ala. 175, 47 South. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20, 16 Ann. Cas. 690, that the consolidated company and the merged companies could be sued together. While that case has been expressly overruled, it has not been overruled on this point, but only as to the equity of the bill to prevent a multiplicity of suits. See second appeal, same case, 174 Ala. 465, 57 South. 11, 40 L. R. A. (N. S.) 464, Ann. Cas. 1914B, 692.

As before stated, there is no attempt in this suit to have the original consolidating corporations declared insolvent, and their assets administered, except in so far as all their assets have gone into the consolidated corporation. The assets are administered as those of the latter corporation, and not of the former, except in so far as it is necessary to preserve rights and liens of creditors which had attached and become vested be-

fore the act of consolidation. We see no legal or equitable objection to administering the whole of the assets of the consolidated corporation, including those acquired from the other corporations by virtue of the act of consolidation, if the merger corporation is insolvent within the meaning of that term as used in our statute. We see no reason why the prior rights and liens as to specific property cannot be preserved as the statute directs, in a case like this. It does seem that this could be done with greater facility and efficiency in one than in several different suits, by the several creditors, against each of the original corporations. The consolidated corporation, having acquired all the title to the assets which the original corporations had, would of necessity have to be made a party to such suits to enforce the several liens of the several creditors of the original corporations. Such a suit as this, in a case like this, is therefore not only expressly authorized by the statutes, but is, of necessity, more expeditious, efficient, and inexpensive, than separate and independent suits by the several creditors against the several corporations would be.

[6] We are not of the opinion that there is shown by this record so little probability of success of complainant's suit that a receiver pendente lite ought not to be appointed. Of course we cannot now know what will be the final result of this suit. That is what the suit itself is brought to determine, and it is now only in its first stage, or embryonic form; but it does not yet appear that there is no such probability of success as would deny the right to a receiver, which would otherwise be proper. If the corporation is not insolvent within the meaning of the statute under which the bill is filed, the suit, of course, must wholly fail; but this depends upon proof to be had on the merits, or on applications to appoint or discharge the receiver; and so far as the record now shows, we are not prepared to say that the chancellor erred in appointing the receiver. Thompson, Corp. § 6330 et seq., and cases cited. In fact, looking to the whole record, and the one in the federal court, it seems certain that a receiver was proper, if not necessary, when he was appointed. The bill in the federal court certainly made no stronger case for the appointment of a receiver than did the bill in the state court. That in the federal court asked for a receiver, and it was confessed by the respondent corporation and the appointment of the receiver consented to. So, if we entertained any doubt as to the propriety or necessity of the state court's appointing a receiver, that doubt would be removed, upon looking to the proceeding in the federal court, which is set up as a reason for the state court's refusal to appoint a receiver as prayed.

[7] We likewise see no reason why the state court should have waited until the mer-

its of the suit had been adjudicated before acting on the application for the appointment of the receiver. The purpose of appointing a receiver was that the assets should be taken in charge by the court, and be preserved until it was determined whether or not they should be administered. Unless the receiver was thus appointed before the merits were adjudicated, the appointment might have been too late, or abortive. The receiver does not represent the complainants nor the litigants, but is an arm or agency of the court appointing him, and his duties and rights are measured by the duties and rights of the court so appointing him. He acts solely by authority of the court appointing him. He is appointed because neither the court nor the chancellor in person can do what the receiver is authorized and required to do; and he is therefore properly authorized and required to do that which the court or the chancellor in person cannot do, as taking possession and control of the subject-matter of the suit, and preserving and administering it as the law may direct. The receiver acts in behalf of no particular litigant or interest, but guards and protects the rights of all, or is intended so to do. His appointment does not change the title or ultimate rights of any one, to the property committed to his charge, nor does it per se alter or affect any contract or lien of the litigants to the property. The appointment does not determine the question of insolvency vel non, nor any other disputed fact upon which the final equities of the bill depend, further than it is necessary that the property should be taken into his custody and control pending the suit and the determination of those equities and disputed facts.

Instead of the appointment of receivers by the federal court being a reason against an appointment by the state court, it is a reason for the appointment. There can be no doubt that if the bill in the state court contained equity—and we hold that it did—the state court first acquired jurisdiction of the subject-matter of this suit, the whole of the assets of the consolidating corporations, and of the consolidated corporation, which in the main are one. While it had not assumed the physical custody and control of the property, which it could not do otherwise than by a receiver, it had acquired jurisdiction thereof for all purposes involved in the bills in the two courts. If it should be conceded that the federal court did have jurisdiction of the parties and of the subject-matter, it was only a jurisdiction concurrent with that of the state court, which had already attached, in which court suit was pending when it was first sought to confer jurisdiction on the federal court. If all the facts in both cases were presented to the federal court, as they are presented to us by this record, we apprehend that the federal court would not further assume jurisdiction, but would remit the

parties to the state court, which first acquired jurisdiction. This seems to be the proper course of procedure in such cases, and it is observed by both state and federal courts, with possibly a few exceptions. The mere fact that the federal court acquired jurisdiction, because of diverse citizenship, does not destroy the wholesome doctrine that where the jurisdiction is concurrent with another, that which first attaches should be retained, and that which last attaches should yield.

Of course a state court nor a Legislature cannot destroy or render nugatory the jurisdiction of federal courts; and all attempts to do so have been uniformly held for naught by the Supreme Court of the United States—and there are many such cases reported in the books and reports of the federal decisions. Of such class are most of the cases relied upon by appellants in this case; but they are not apt here, because there is manifest in this case no such attempt by either a state Legislature or a state court.

One of the leading cases applicable to the one in hand is that of Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867. There the circuit court of the United States assumed control of an estate as to which a state court had theretofore assumed jurisdiction; and on appeal to the Supreme Court of the United States, that court, per Brewer, J., said:

"In order to pave the way to a clear understanding of this question, it may be well to state some general propositions which have become fully settled by the decisions of this court, and, first, it is a rule of general application that where property is in the actual possession of one court of competent jurisdiction, such possession cannot be disturbed by process out of another court. The doctrine has been affirmed again and again by this court" (citing many authorities) 149 U. S. 614, 13 Sup. Ct. 908, 37 L. Ed. 867.

In Ellis v. Davis, 109 U. S. 485, 498, 3 Sup. Ct. 327, 335 (27 L. Ed. 1006) it was said:

"In Payne v. Hook, 7 Wall. 425 [19 L. Ed. 260], it was decided that the jurisdiction of the Circuit Court of the United States, in a case for equitable relief, was not excluded because, by the laws of the state, the matter was within the exclusive jurisdiction of its probate courts; but, as in all other cases of conflict between jurisdictions of independent and concurrent authority, that which has first acquired possession of the res, which is the subject of the litigation, is entitled to administer to it."

If the receiver had been actually appointed before the filing of the bill in the federal court, and the receiver of the state court had assumed actual custody and control of the property, we apprehend there could be no contention that the federal court could or would arrest the jurisdiction of the state court because of diverse citizenship. The state and the federal authorities seem to have had cases showing the exact facts of this case; that is, where the jurisdiction of the state court has attached, but no receiver was actually appointed, and no actual custody or control of the property assumed by the state court, when the bill was filed in the federal court, or when that court, through its receiver, assumed actual custody and control of the property the subject-matter of the suit. This principle has been so often reaffirmed that it is useless to cite the cases, and we find no conflict therewith. It is possibly as well expressed by Justice Shiras in the Farmers' Loan, etc., Co. Case, 177 U. S., at page 61, 20 Sup. Ct., at page 568, 44 L. Ed. 667, as elsewhere. It is there said:

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts. Peck v. Jenness, 7 How. 612 [12 L. Ed. 841]; Freeman v. Howe, 24 How. 450 [16 L. Ed. 749]; Moran v. Sturges, 154 U. S. 256 [14 Sup. Ct. 1019, 38 L. Ed. 981]; Central Bank v. Stevens, 169 U. S. 432 [18 Sup. Ct. 403, 42 L. Ed. 807]; Harkrader v. Wadley, 174 U. S. 148 [19 Sup. Ct. 119, 43 L. Ed. 399]."

The cases further hold that it is not necessary that a receiver be appointed if the jurisdiction of the court has first attached to the subject-matter; that the date of the appointment of the receiver may depend upon consideration of convenience, as in the case now in hand, and the appointment be made at any time during the progress of the litigation, as the necessities may require.

The courts, both state and federal, hold that this doctrine or principle is not only one of comity, to prevent unseemly conflicts, but that it is more; that it is one of fundamental right, of law, and of necessity. Louisville Trust Co. v. Knott, 130 Fed. 820, 65 C. C. A. 158; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390; B. & O. Ry. Co. v. Wabash Co., 119 Fed. 678, 57 C. C. A. 322; Id., 187 U. S. 650, 23 Sup. Ct. 848, 47 L. Ed. 349; Corbett v. Riddle, 209 Fed. 811, 126 C. C. A. 535.

The only cases we have found—and we have examined many, in addition to those cited and relied upon in brief of counsel—which appear to hold differently, are clearly distinguishable from cases like one in hand. Sometimes they are distinguishable on the ground that the state court did not have jurisdiction for the purpose for which the federal court assumed jurisdiction, and that the right asserted by the federal court is paramount to that asserted by the state court. In these, and like cases, the reason for the rule ceases, and the rule itself, of

course, no longer applies. Here, no relief is sought in the federal court which could not be awarded in the state court.

[8] We find no error or impropriety in the chancellor's directing the receiver appointed by him, to intervene in the suit in the federal court, for the purpose of having that court discharge its receivers and direct the custody and control of the property to be delivered to the receiver of the state court. The fact that the complainant in the state court might intervene for the purpose does not deny the right of a receiver so to do, if so ordered and directed by the court appointing him.

[9] It is insisted by the appellants that the bill is without equity, and that complainant is entitled to no relief because of certain provisions in the trust deeds securing complainant's debts which are evidenced by certain bonds of the Tombigbee Valley Railroad Company and the terminal company, two of the three consolidating corporations. Those provisions of the deeds of trust are to the effect that a sale of the mortgaged property shall operate as a full satisfaction of the bonded indebtedness secured by the deed of trust, as to both principal and interest, even though the property, when sold in foreclosure proceedings or otherwise, brings less than the amount due. That is, that the holders of the bonds and coupons, unless paid voluntarily by the makers, or the consolidated corporation which has acquired the property (subject, of course, to the mortgages or deeds of trust), are remitted to the property mortgaged, and must proceed against it alone, by foreclosure proceedings of some sort, and that there is no ultimate liability of the makers of the bonds, or of the consolidated corporation which acquired the property and guaranteed the payment of such bonds; that the guaranty was subject to, or limited or qualified by, the written provision or provisions in the trust deed, to the effect that there was no personal or corporate liability other or further than that to have a sale or application of the property to the satisfaction of the debts secured by the deed of trust.

It is replied by appellee that these provisions are not binding on the appellee; certainly, as to a part of his bonds, and that if they were, as to all the bonds, this was changed by the subsequent indorsement or guaranty of the bonds by the consolidated company when it acquired the interest and title therein of the original corporations. It is both improper and unnecessary for us to now pass on any of these disputed questions, for the reason that appellee, so far as the decree of the lower court, or this appeal, is concerned, is not now seeking any relief personal against the original corporations or against the consolidated company, but is only seeking to have the court take possession of the mortgaged property, and to conserve and preserve it, so that it may be applied to the debts of appellee and of other creditors, to secure the payment of which it was mortgaged or conveyed by the deed of trust. He is not seeking any relief inconsistent with those provisions or conditions, if such there be, in the deed of trust. It will be time enough to consider and decide questions as to whether there can be any judgment or decree over for the balance, if any, after the property is sold and the proceeds are applied as provided in the deed of trust, when that is sought to be done, or when a subsequent action or proceeding is brought to enforce liability, which is contrary to the provisions in the deed of trust. There is nothing in this proceeding, up to date, which attempts to fix liability different from that imposed in those provisions, though such questions may arise later.

[10] It is likewise not proper for us to discuss or decide as to the merits or defects of the bill filed in the federal court, further than to say it was certainly within the lis pendens of this suit in the state court, and sought relief identical with that sought in the state court, in so far as the receivership to preserve the property is concerned. It is very true that the scope of the bill in the federal court to foreclose only one of the deeds of trust, and to enforce a part only of the liens on a part only of the property, was more limited than that of this bill in the state court; but to the extent to which it went, it was similar, or rather, sought similar results.

While we do not pass upon the equity of that bill, yet we do not see how the relief prayed in the bill in the federal court can be awarded, on the prayer that complainant, who is a junior lienor, seeking at his suit to have superior lienors enforce their liens, so that he can then enforce his liens as to the same property. It may be that there are circumstances or conditions that take the case made by that bill without the rule announced in Jones on Mortgages, vol. 2, § 439, Mims v. Cobbs, 110 Ala. 582, 18 South. 309, and Bingham v. Vandegrift, 93 Ala. 283, 9 South. 280, but, as before stated, this is not a question which now concerns us. It is enough to say that it is within the lis pendens of this suit in the state court, and, if continued, would defeat the jurisdiction of the state court, which attached first, which court, so far as this suit is concerned, is a court of concurrent jurisdiction with the federal court, and that no reason appears why the jurisdiction of the state court should not continue, nor why the property should not be delivered over to the receiver appointed by the state court.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.