ALUMINUM GOODS MANUFACTURING COMPANY, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15814. Promulgated February 2, 1931.

*Paul F. Myers, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

OPINION.

STERNHAGEN: This proceeding involves deficiencies of $5,438.57, $66,119.06, and $14,878.55 in profits taxes for 1917, 1919, and 1921, respectively. Petitioner seeks to deduct on its consolidated profits tax return for 1917 the cost of stock and amount of unpaid advances made to its liquidated but undissolved subsidiary, and to carry the effect of such deduction into the computation of invested capital for later years. The case was submitted on the following agreed statement of facts:

1. Aluminum Goods Manufacturing Co., the petitioner, is a corporation organized in the year 1909 and existing under and by virtue of the laws of the State of New Jersey, with its principal office at Fifteenth and Franklin Streets, Manitowoc, Wisconsin. On March 27, 1926, the Commissioner of Internal Revenue mailed to the petitioner a notice of deficiency of income and excess profits taxes for the year ending December 31, 1917,—a correct copy of which notice of deficiency is attached to the petition filed herein. The correct income and excess profits taxes for the petitioner for the years 1918, 1919, 1920 and 1921 are involved only in so far as such taxes are affected by a change in invested capital that may be necessary on account of any change in the income and excess profits taxes of the petitioner for the year ending December 31, 1917, as may be found in this proceeding, the respondent by this stipulation, however, not admitting that the Board has jurisdiction for the years 1918 and 1920.

2. The petitioner was a manufacturer and in the year 1914 it was selling its goods-principally to jobbers. At that time the Aluminum Sales & Manufacturing Company (a New York Corporation), hereinafter called the Sales Company, was engaged in selling similar goods, principally to the retail trade, and during the year 1914 the petitioner purchased all the capital stock of the Sales Company, paying therefor in cash $29,749.80, as a business venture and for purposes of experimentation with the view of thereby acquiring a market to retailers. After the acquisition of its capital stock by petitioner, the Sales Company was operated as a jobbing house under the control of the petitioner, and the Sales Company sold, principally, goods manufactured by petitioner and sold by petitioner to the Sales Company, and the business of the Sales Company was almost exclusively that of furnishing an outlet for goods manufactured by petitioner.

3. The petitioner billed and delivered the goods to the Sales Company at its prevailing list price for that class of business. The goods were sold to retailers by the Sales Company and from the collections and its capital the Sales Company made remittances to petitioner for the goods purchased from the petitioner. The Sales Company conducted two places of business, one in Indianapolis, Indiana, and one in New York, New York. The Sales Company maintained a cash revolving fund of fixed amount. When the Sales Company disbursed cash from time to time for the payment of operating expenses, such as rent, salaries, insurance, taxes, etc., the revolving fund was restored by advances from the petitioner.

4. The Indianapolis place of business of the Sales Company was discontinued during the year 1916 and at the end of that year the net unpaid cash advances to the Sales Company by petitioner for the use of that place of business amounted to $33,491.01.

5. During the year 1917 the New York place of business of the Sales Company was discontinued. Certain of the current assets of the Sales Company were thereupon taken over by the petitioner, the Sales Company receiving credit therefor on its open account with the petitioner. At the end of the year the net amount unremitted to the petitioner for merchandise and cash furnished by the petitioner to the Sales Company for the use of that place of business was $13,995.30.

6. The net indebtedness of the Sales Company to petitioner as of the end of the year 1916 was $130,988.71, and at the end of the year 1917 said indebtedness had become reduced to $47,486.31, being the sum of the aforesaid amounts of $33,491.01 and $13,995.30, and the aforesaid sums of $33,491.01 and $13,995.30 never were repaid to the petitioner; and on its liquidation in 1917 Sales Company had no means with which to pay them, excepting the items of good will and equipment mentioned in paragraphs seven and twelve. Said sums were charged off by petitioner as follows: Said $33,491.01 December 30, 1916, and said $13,995.30 December 31, 1917.

7. The business of the Sales Company during the year 1917 consisted chiefly in finally closing up its affairs preparatory to formal dissolution. The Sales Company did not transact any business after the close of the year 1917, and all of its assets and liabilities were disposed of by the end of that year. In February, 1918, formal dissolution of the Sales Company was effected by the surrender of its charter. (See Exhibit 1, attached hereto and made a part hereof, being true copies of papers evidencing formal dissolution). The petitioner being the sole owner of all of the capital stock of the Sales Company (the three individuals shown in Exhibit 1 being merely record owners) at the time of its liquidation in 1917, acquired all the assets of said Company, in-

cluding good will and equipment. The good will of said Company acquired by petitioner was of a value of $6,490.27 which was the value placed upon the good will when petitioner purchased all the capital stock of the Sales Company in 1914, and the equipment thus acquired by petitioner was of a value of $4,194.29, exclusive of the items referred to in paragraph five. The good will and equipment were the only assets of any value acquired by the petitioner upon final liquidation of the Sales Company in 1917, and were the last remaining assets of the Sales Company. The Sales Company did not transact any business after the close of the year 1917, and all of its assets were completely disposed of during the year 1917, so that it had no assets whatsoever at the close of the year 1917. The petitioner charged off on its books all its investment in the capital stock of the Sales Company in the years 1916 and 1917, to wit: $11,025.47 December 31, 1916, and $18,724.33 December 31, 1917, making an aggregate of $29,749.80.

8. The operations of the Sales Company reflected losses during the years 1914, 1915, and 1916, which were not deducted in the determination of petitioner's net income for these years, and the tax returns of the petitioner for said years included in its income a normal profit on the goods furnished by it to the Sales Company.

9. The operations of the Sales Company reflected a loss of $14,689.65 for the year 1917.

10. Up to and including the year 1916, the petitioner and the Sales Company made separate tax returns.

11. During the years 1914 to 1917, inclusive, the petitioner was the sole owner of all the capital stock of the Sales Company.

12. The petitioner filed a separate return for normal tax purposes, and a consolidated return with the Sales Company for excess profits tax purposes for the year 1917. On a separate amended return for 1917, petitioner claimed as a deduction a loss arising out of the liquidation of the Sales Company as follows:

```
Advances to Indianapolis office of Sales Co._____ $33,491.01
Advances to New York office of Sales Co._____  13,995.30
                                                  _____ $47,486.31
Investment in capital stock of Sales Co_____  29,749.80

    Total_____  77,236.11
Less: Value of good will and equipment received
    on liquidation of Sales Co.:
    Goodwill_____  6,490.27
    Equipment _____  4,194.29
                                                  _____  10,684.56
Loss claimed and deducted_____  66,551.55
```

The respondent allowed this alleged loss in determining the net income subject to normal tax, as reflected in the deficiency notice.

13. In connection with the audit of its consolidated return for 1917, before the Bureau of Internal Revenue, the petitioner claimed a deductible loss of $51,861.90, being the difference between the alleged loss of $66,551.55 on liquidation of the Sales Company, less $14,689.65 operating loss of the Sales Company in 1917. The respondent in determining the net income subject to excess profits tax allowed the operating loss of $14,689.65 as such, as a deduction and disallowed the amount of $51,861.90. The deficiency determined by the Commissioner for the year 1917 is based upon a total tax liability as determined by the Commissioner in the amount of $648,007.42, including normal taxes in

the amount of $57,478.35, and excess profits taxes in the amount of $590,529.07. The normal taxes were based upon petitioner's separate net income as determined by the Commissioner in the amount of $1,548,501.62. The excess profits taxes were based upon the consolidated net income and invested capital, as determined by the Commissioner, of petitioner and said Sales Company for the entire calendar year 1917. Such consolidated net income was computed as follows:

| | |
|---|---:|
| Petitioner's net income as corrected | $1, 548, 501.62 |
| Sales Company's net loss as corrected | 14, 689. 65 |
| Aggregate net income | 1, 533, 811. 97 |
| Adjustments: | |
| Add loss on liquidation of Sales Co. | 66, 551. 55 |
| Consolidated net income for excess profits tax purposes | 1, 600, 363. 52 |

The total tax liability and the deficiency for the year 1917 were computed by the Commissioner as follows:

| | | |
|---|---:|---:|
| Consolidated net income | | $1, 600, 363. 52 |
| Consolidated invested capital | | 3, 075, 742. 09 |
| Variable deduction | | 276, 816. 79 |
| Specific exemption | | 3, 000. 00 |
| Total deductions | | 279, 816. 79 |
| Excess profits tax (entire profit tax allocated to parent company) | | 590, 529. 07 |
| Petitioner's taxable net income | $1, 548, 501. 62 | |
| Deduct excess profits tax | 590, 529. 07 | |
| Taxable at 2% | 957, 972. 55 | 19, 159. 45 |
| Taxable at 4% | 957, 972. 55 | 38, 318. 90 |
| Total tax liability | | 648, 007. 42 |
| Previously assessed | | 642, 568. 85 |
| Deficiency | | 5, 438. 57 |

In all essential respects the facts and contentions are the same as those in *Utica Knitting Co.* v. *United States*, 68 Ct. Cls. 77. The Court sustained the Commissioner's disallowance of the deduction for loss both as to advances and cost of stock, holding that in respect of corporations affiliated in 1917 in accordance with section 1331, Revenue Act of 1921, intercompany losses during the period of affiliation were not deductible in determining income subject to profits tax, even though deduction was permitted in determining separately the taxable net income of one corporation of the group subject to income tax. The Supreme Court denied certiorari, 281 U. S. 739. There is no contrary view of similar facts and we follow that decision.

The decisions in *Remington Rand, Inc.* v. *Commissioner*, 33 Fed. (2d) 77; *United Publishers Corporation* v. *Anderson*, 42 Fed. (2d) 787; and *Riggs National Bank*, 17 B. T. A. 615, are not in point,

since they all deal with situations where the affiliation ceased in the year in question, while here the petitioner continued to own all the Sales Company stock and filed a consolidated return, and it is not contended that the statutory affiliation ceased before the following year. *Alpha Portland Cement Co.* v. *United States*, 44 Fed. (2d) 92, related to the deduction by the affiliated group of the cost of assets which had become worthless and were abandoned.

As to 1918 and 1920, no deficiency has been determined and the Board lacks jurisdiction. *Cornelius Cotton Mills*, 4 B. T. A. 255. For those years the proceedings will be dismissed.

> *For 1917, 1991, 1921, judgment will be entered for the respondent.*