(81 South. 60)
STATE v. ATLANTIC COAST LINE R. CO.
(3 Div. 301.)

(Supreme Court of Alabama.   June 27, 1918. Rehearing Denied Feb. 13, 1919.)

1. CORPORATIONS ⬤⇒586 — "CONSOLIDATION" —"MERGER."

Strictly speaking, a "consolidation" of corporations means the unifying of two or more corporations into a single new corporation, having the combined capital, franchises, and powers of all its constituents, while a "merger" means the absorption of one corporation by another, which retains its name and corporate identity with the added capital, franchises, and powers of the merged corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Consolidation; Merger.]

2. RAILROADS ⬤⇒143 — "CONSOLIDATION"— FRANCHISE TAX.

Where a Virginia railroad corporation absorbed an Alabama corporation under authority of Code 1896, §§ 1166–1168, as amended by Act Dec. 10, 1900 (Gen. Acts 1900–01, p. 237), retaining its name and principal place of business in Virginia, there was a consolidation as far as rendering corporation liable as domestic corporation in Alabama for a franchise tax, based upon the entire amount of its capital stock, was concerned, and it was immaterial that under laws of Virginia it was permitted to consolidate with other corporations only by merging them into itself.

**3. CORPORATIONS** ⊂⊃638—FOREIGN CORPORATIONS—STATUS—WHAT LAW GOVERNS.

The statutes of another state cannot prescribe status in Alabama of a corporation of such other state.

**4. PLEADING** ⊂⊃311 — CONCLUSIONS—EXHIBITS.

When a conclusion of fact is alleged, and reference is made to exhibits which show all facts necessary to support the conclusion, the matter is sufficiently pleaded.

**5. EVIDENCE** ⊂⊃265(2) — ADMISSIONS—CONCLUSIVENESS.

While assertions by a railroad corporation in mortgage deeds executed by it that it is a corporation duly organized under the laws of certain states in which it is operating lines might be admissible in evidence as admissions, they do not conclude such railroad, in an action by one of the states against it as a domestic corporation for a franchise tax, from denying that it was duly organized in that state.

**6. EVIDENCE** ⊂⊃208(2)—ADMISSIONS—PLEADINGS.

Mere formal pleadings framed by counsel for purposes of a particular case are not admissible against a party in another proceeding as admissions of the facts recited, unless shown to have been drawn by express direction of party in whose behalf they are filed, and any statement of fact therein contained to have been inserted by his direction or with his assent.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Action by the State of Alabama against the Atlantic Coast Line Railroad Company. From a judgment sustaining a demurrer to the complaint, the plaintiff appeals. Reversed, rendered, and remanded.

W. L. Martin, Atty. Gen., and Lawrence E. Brown, Asst. Atty. Gen., on first trial; F. Lloyd Tate, Atty. Gen., and Emmett S. Thigpen, Asst. Atty. Gen., on rehearing, for the State.

John R. Tyson, of Montgomery, and W. E. Kay, of Jacksonville, Fla., for appellee.

SOMERVILLE, J. The state of Alabama sues to recover of the defendant railroad company, as a domestic corporation, the sum of $28,000, claimed to be due as a franchise tax levied under section 16 of the Revenue Act of 1915 (Acts 1915, p. 397), and estimated upon the entire capital stock of the corporation.

The state's theory is that defendant, though originally chartered by the state of Virginia, has, by consolidation with several railroad companies organized under the laws of Alabama, and operating therein, become in fact a domestic corporation, and subject as such to all the laws of Alabama.

The defendant's theory is that under its original charter, and under the laws of Virginia, it has no authority to consolidate with foreign railroad companies, but only to consolidate such foreign corporations with itself; that is, to merge them into itself, while fully preserving its own identity as a Virginia corporation, with its domicile in that state. Defendant's insistence, therefore, is that it has not consolidated with any Alabama railroad corporation, under the statutes of Alabama, but that it has simply absorbed the Alabama railroads by a transaction which amounts merely to a purchase and taking over, and hence that defendant has not become a domestic corporation in Alabama.

As shown by the numerous exhibits attached to the complaint, the present status of the Atlantic Coast Line Railroad Company in Alabama has been arrived at as follows:

In 1888 the Alabama Midland Railway Company, an Alabama Corporation, and the Alabama Midland Railway Company, a Georgia corporation, were "united, merged, and consolidated as one company and corporation" called the Alabama Midland Railway Company.

In May, 1901, the said Alabama Midland Railway Company, and the Savannah, Florida & Western Railway Company, a Georgia corporation, along with several minor railroads of Georgia and Florida were "merged, united, and consolidated" into and under the name of the Savannah, Florida & Western Railway Company, with its principal place of business in Savannah, Ga.

In July 1901, the said Savannah, Florida & Western Railway Company, the Abbeville Southern Railway Company, and the Southwestern Alabama Railway Company, Alabama corporations, were "merged, united and consolidated" into and under the name of the Savannah, Florida & Western Railway Company, with its principal place of business in Savannah, Ga.

In April, 1902, articles of "consolidation and merger" were agreed upon and consummated by the Atlantic Coast Line Railroad Company, and the Savannah, Florida & Western Railway Company, as follows (so far as pertinent):

"Said Savannah, Florida & Western Railway Company, and all of its capital stock, property, and franchises, are hereby merged, united, and consolidated with the said Atlantic Coast Line Railroad Company, and its capital stock, property, and franchises, so as to form a merged, united, and consolidated company; which will have, hold, possess, and enjoy all and singular the said capital stocks, property, and franchises of every kind whatsoever and wheresoever situated, at the date of these presents, and at the date of the consummation of this merger, union, and consolidation, held, possessed, or enjoyed by either of the parties hereto, or to which they are, or either of them is, or may hereafter be, entitled, either at law or in equity. * * *

"The said merger, union, and consolidation

shall be into the Atlantic Coast Line Railroad Company, which is to continue as the name of the consolidated company, and the principal office or place of business of the Coast Line Company in the city of Richmond, Va., shall continue to be the principal office or place of business of the consolidated company. * * *

"The present holders of the preferred and common stock of the Coast Line Company shall retain their shares now outstanding as preferred stock and common stock, respectively, in the consolidated company. The holders of the preferred stock of the Savannah Company shall be entitled to receive 50 per cent. of the par value of their respective holdings in the common stock of the consolidated company at par. The holders of the common stock of the Savannah Company shall be entitled to receive twenty-five per cent. of the par value of their respective holdings in the common stock of the consolidated company at par.

"Any holder of preferred or common stock of the Savannah Company who shall refuse to convert his stock into the stock of the consolidated company on the terms hereinbefore provided shall be paid for the same at an agreed valuation in four per cent. mortgage bonds of the consolidated company or in cash; and, in case no valuation can be agreed upon, such stock shall be paid for in cash at a valuation to be determined as provided by law."

This "consolidation and merger" was effected under the authority, and in full compliance with the terms and requirements, of sections 1166, 1167, and 1168 of the Alabama Code of 1896, as amended by the act of December 10, 1900 (Gen. Acts 1900–01, p. 237). Section 1166, as amended, was as follows:

"Sec. 1166. *Consolidation of Railroad Corporations.*—Whenever the lines of any two or more railroads, or contemplated railroads chartered under the laws of this or any other state, which when completed, may admit the passage of burden or passenger cars over any two or more of such roads continuously without break or interruption, such companies are authorized, before or after completion, to consolidate themselves into a single corporation, in the manner following: The directors of such corporations may enter into an agreement, under the corporate seal of each for consolidation, prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new corporation, the number of the directors thereof, which shall not exceed thirteen, the time and place of holding the first election of directors, the number of shares of capital stock in the new corporation, the amount of each share, the manner of converting the shares of capital stock of each corporation into shares in the new corporation, the manner of compensating stockholders in each of the two or more corporations who refuse to convert their stock into the stock of the new corporation, with such other details as they shall deem necessary to protect such consolidation; and such new corporation shall possess all the powers, rights and franchises conferred upon the two or more corporations, and shall be subject to all the restrictions, and perform all the duties imposed by the provisions of this article. The stock-

holders in either of such corporations, who shall refuse to convert their stock into the stock of the new corporation shall be paid actual value for each of their shares held by them, if they shall so require previous to the consolidation being consummated.

"Such agreement of the directors shall not be deemed to be the agreement of the two or more corporations until after it has been submitted to the stockholders of each of the corporations separately at a meeting thereof to be called upon a notice of at least thirty days, specifying the time and place of such meeting and the object thereof, to be addressed to each stockholder when his place of residence is known and deposited in the postoffice, and published for at least three successive weeks in one newspaper in one of the cities or towns in which each of such corporations has its principal office of business, and has been sanctioned by such stockholders by a vote of at least two-thirds in amount of the stockholders present at such meeting, voting by ballot in regard to such agreement either in person or by proxy, each share of capital stock being entitled to one vote. When such agreements of the directors have been so sanctioned by each of the meetings of the stockholders separately after being submitted to such meetings in the manner above mentioned, then such agreement shall be deemed to be the agreement of the two or more corporations: Provided, that every such new corporation so formed shall keep an office in the state of Alabama, and be in all respects subject to the laws of the state of Alabama as a domestic corporation."

Sections 1167 and 1168 remained unchanged. They merely declare the agreement executed upon compliance with the preceding section, and deal with the rights of creditors of the constituent corporations.

[1] Accurate logicians very properly distinguish between the meanings of "consolidation" and "merger." Strictly speaking, a consolidation means the unifying of two or more corporations into a *single new corporation,* having the combined capital, franchises, and powers of all of its constituents. And, strictly speaking, a merger means the *absorption* of one corporation by another, which retains its name and corporate identity, with the added capital, franchises, and powers of the merged corporation. Alabama, T. & N. R. R. Co. v. Tolman, 200 Ala. 449, 76 South. 381; note 89 Am. St. Rep. 607; Noyes on Intercorporate Relations, §§ 7–11.

[2, 3] For most purposes, however, and apart from mere questions of identity, the result is in each case practically the same; and so it is that courts and text-writers have usually used the terms "consolidation" and "merger" interchangeably, and, in cases of doubt, conjunctively, to express the idea of complete corporate union, whether a new corporation nominally results or whether a constituent corporation is nominally preserved.

This question was given rather elaborate consideration by this court in the case of Meyer v. Johnston, 64 Ala. 603, page 656, and it was there said, per Manning, J.:

"When the rights, franchises, and effects of two or more corporations are, by legal authority and agreement of the parties, combined and united into one whole, and committed to a single corporation, the stockholders of which are composed of those (so far as they choose to become such) of the companies thus agreeing, this is in law, and according tô common understanding, a consolidation of such companies; whether such single corporation, called the consolidated company, be a new one then created, or one of the original companies, continuing in existence with only larger rights, capacities, and property. Acceptance of this as correct makes it easy to understand that authority given to consolidate, 'to such extent, and on such terms, as the parties may agree upon,' confers the power to constitute one of the original companies the consolidated company."

That each of the several corporate unions above referred to including the final union between the Atlantic Coast Line Railroad Company and the Savannah, Florida & Western Railway Company, was a consolidation, albeit a merger, of the latter into the former, within the meaning and intent of our statutes, does not, we think, admit of any rational doubt. In the sense of the statute, the consolidated corporation, though retaining the name and domicile of its chief constituent, the Atlantic Coast Line Railroad Company was a new corporation, different from and greater than any of its constituents; and, by the express provision of the statute which enabled it to unite with and merge into itself the several Alabama constituents, it became and remained "in all respects subject to the laws of the state of Alabama as a domestic corporation." K. C., M. & B. R. R. Co. v. Stiles, 242 U. S. 111, 37 Sup. Ct. 58, 61 L. Ed. 176, affirming s. c., 182 Ala. 138, 62 South. 734.

This is not to say that the Atlantic Coast Line Railroad Company ceased to exist as a corporation organized under the laws of Virginia, and in all respects subject to those laws. And we may concede the main argument of counsel for the railroad company, viz. that, under the special phraseology of the Virginia statutes, its creature, the Atlantic Coast Line Railroad Company, is permitted to consolidate with other corporations only by merging them into itself, without in the least affecting the question of its status as an Alabama corporation. For it is clear that Virginia statutes cannot prescribe the status of a Virginia corporation in Alabama, organized and acting as an Alabama corporation under and by virtue of Alabama statutes. By absorbing an Alabama railroad corporation—and by virtue of the statutes referred to the Savannah, Florida & Western Railway Company was an Alabama corporation—the Coast Line Company acquired a local habitat, and assumed the legal status of a domestic corporation under the statutes of Alabama. From this status it cannot escape so long as it operates its railroad lines in Alabama under franchises granted by the state upon

202 ALA.—36

the express condition of its domestication and subjection to local laws.

We have examined all the authorities cited by counsel, and do not think that any of them are opposed to the conclusions we have stated. In particular, we observe that the case of Lee v. Atlantic Coast Line R. R. Co. (C. C.) 150 Fed. 775, while it holds that a union of the Coast Line Company with South Carolina corporations, under articles of "consolidation and merger," and under statutes, similar to those here presented, was a merger only, and did not affect the identity and continued existence of that company, decided no more than this, viz. that, for purposes of federal jurisdiction, the domestication of the company in South Carolina by its acceptance of a charter from that state as a consolidated corporation did not change its citizenship from the state of Virginia to the state of South Carolina, and that it remained a citizen of the state which originally created it, and in which it maintained its principal place of business. This doctrine seems to be thoroughly well settled. Louisville, etc., R. R. Co. v. Louisville Trust Co., 174 U. S. 564, 19 Sup. Ct. 821, 43 L. Ed. 1081; South R. R. Co. v. Allison, 190 U. S. 326, 23 Sup. Ct. 713, 47 L. Ed. 1078; St. Louis R. R. Co. v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802.

In the Lee Case, however, it is conceded that the issuance of the charter certificate by the state of South Carolina to the Coast Line Company "had the effect of domesticating the company thus enlarged * * * *for all purposes*, except that of depriving it of its right to assert its citizenship as being in the state of its creation" (italics ours). (C. C.) 150 Fed. 798.

We have discussed the meritorious question in the case, as argued by counsel, and our conclusion, apart from technical questions of pleading is that the defendant railroad company is a domestic corporation for the purposes of taxation, and under the decision of this court in K. C., M. & B. R. R. Co. v. Stiles, supra, it is subject to a franchise tax based upon the amount of its capital stock as claimed in the complaint.

Demurrers to the complaint, however, challenge the sufficiency of the allegations of the complaint in several particulars, and it is insisted by defendant (1) that there is a failure to aver that the Savannah, Florida & Western Railway Company had authority to enter into the several agreements of consolidation, either by its charter or by a statute of Georgia; and (2) that there is a failure to aver that the physical conditions necessary to a lawful consolidation of Coast Line Company with the Savannah, Florida & Western Company existed at the time of the alleged consolidation between them.

[4] It is true the complaint does not allege these matters as distinct facts. But we think it is a sound and practical rule of pleading

that when a conclusion of fact is alleged, and reference is made to exhibits which show all the facts necessary to support the conclusion, the matter is sufficiently pleaded. In this case the exhibits attached to the complaint meet this requirement, and we think the demurrer was without merit and should have been overruled.

[5] On motion of defendant the trial court struck from the complaint subsections 1, 2, 3, 4, 5, and 6 and the exhibits thereto. All of these except No. 2 show reports made by the defendant company or assertions in mortgage deeds executed by it, that it is a corporation duly organized under the laws of each of the states (including Alabama) in which it is operating lines of railroad.

These matters might be admissible in evidence as admissions, to show, if the issues permit, that defendant has been operating railroads in Alabama since April, 1902, as a corporation domesticated under Alabama statutes. Of course they do not, in the form presented, show any estoppel against defendant, nor can such admission in pais conclude defendant from denying that there was a valid consolidation and merger, in so far as that result is a question of law.

No. 2 sets forth a complaint filed by the defendant company against J. B. Gaston, judge of probate of Montgomery county, to recover certain taxes exacted of it, as from a foreign corporation. This complaint contains, among others, the following allegations:

"That plaintiff, the said Atlantic Coast Line Railway Company, became a domesticated corporation, and that the only business which plaintiff did in the state of Alabama, under said consolidation agreement, was intrastate business, and that the right to do such intrastate business was by virtue and under the authority of the original franchises of said three domestic corporations, hereinbefore particularly set out and described, and which were transferred to the said Savannah, Florida & Western Railway Company, as aforesaid. And plaintiff avers that in no respect since plaintiff has been operating the franchises of the aforesaid domestic corporations which were acquired first by the Savannah, Florida & Western Railway Company, and thereafter by the plaintiff, has it complied with the constitutional and statutory provisions of the state of Alabama with reference to foreign corporations doing business in the said state of Alabama, nor has it ever considered itself or been treated by the state of Alabama as such in the carrying on of its intrastate business. Plaintiff avers that as a domesticated corporation, as aforesaid, it was exempt from paying the franchise or license tax sought to be imposed upon foreign corporations carrying on business in Alabama, by an act of the Legislature of said state of Alabama known as House Bill 611; but plaintiff avers that notwithstanding its legal exemption from the payment of said franchise tax sought to be imposed on foreign corporations by House Bill 611, as aforesaid, plaintiff was compelled, under the threatened

pains and penalties of the law, to pay, and did pay, under protest and duress, to the Honorable John B. Gaston, probate judge of Montgomery county, Alabama, as a franchise tax for doing business in the state of Alabama, for and during the year 1908, the sum of $6,243."

[6] With respect to No. 2, it is to be noted that mere formal pleadings, which are framed by counsel for the purposes of a particular case, are not admissible against a party in another proceeding as admissions of the facts recited. "But if the pleadings are shown to have been drawn by the express direction of the party in whose behalf they are filed, and any statements of fact therein contained to have been inserted by his direction or with his assent, the pleadings are admissions of the facts therein contained as against such a party in subsequent cases." 1 Greenl. on Ev. (16th Ed.) § 186, p. 313.

Plaintiff cannot complain of error in the striking of these sections and exhibits from the complaint. What we have said will be a sufficient guide to the trial court with respect to their use as evidence by way of admissions in pais.

It results that the judgment of the trial court sustaining the demurrer to the complaint was erroneous, and a judgment will be here rendered overruling the demurrer and remanding the cause for further proceedings.

Reversed, rendered, and remanded.

All the Justices concur.