## WILMINGTON TRUST CO. v. LATCHUM.

District Court, D. Delaware.

March 23, 1942.

J. J. Morris, Jr., of Wilmington, Del. (Bradford S. Magill, of New York City, of counsel), for plaintiff.

Charles Stewart Lynch, U. S. Atty., of Wilmington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and E. E. Angevine, Sp. Assts. to Atty. Gen., for defendant.

W. CLARK, Circuit Judge.

The facts are stipulated and may be stated briefly. Utilities Employees Securities Company (hereinafter called UESCO) was not qualified to carry on business in Massachusetts. It therefore organized the New England Capital Corporation (hereinafter called NECAP) under the laws of Massachusetts in 1934. Subsequently UESCO became qualified to do business in Massachusetts. At this time UESCO owned all of the issued common and preferred stock of NECAP. Since Massachusetts had no statute permitting or providing for a consolidation or merger, it was decided that NECAP be liquidated on November 21, 1938. Pursuant to the plan of liquidation all of the assets of NECAP were transferred to UESCO and within three years all of the capital stock of NECAP was surrendered to it by UESCO. NECAP was then dissolved. Included in the assets transferred by NECAP to UESCO were certain bonds and debentures in connection with the transfer of which the plaintiff bought documentary transfer stamps. The plaintiff is now seeking to recover the $854.24 paid for the stamps on the ground that the purchase was made erroneously.

Section 724 of the Revenue Act of 1932, which was in effect in 1938, 26 U.S.C.A. Int.Rev.Code § 3481, the year governing

this transaction, imposed a documentary stamp tax on all transfers of bonds, with the following exception, among others: "Provided further, That the tax shall not be imposed on deliveries or transfers of bonds in connection with a reorganization (as defined in section 112 of the Revenue Act of 1932, 47 Stat. 196) if any of the gain or loss from the exchange or distribution involved in the delivery or transfer is not recognized under the income tax law applicable to the year in which the delivery or transfer is made."

Plaintiff contends that the transfer of bonds from NECAP to UESCO was tax exempt because the transfer was made in connection with a reorganization as defined in section 112 of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Acts, page 513, and further that no gain or loss from the transfer involved was recognized under the Revenue Act of 1938, which was the income tax law applicable to the year in which the transfer was made. The latter half of the contention, namely, that no gain or loss was recognizable under Section 112(b) (6) of the 1938 Act. 26 U.S.C.A.Int.Rev.Code § 112(b) (6) is conceded. The present controversy is concerned solely with whether the transaction was a "reorganization" as defined in the 1932 Act.[1] The plaintiff argues that the transaction comes within the statutory definition because it was "a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation)."

Although this statutory definition of "reorganization" has been in effect since 1921,[2] its exact meaning is still extremely troublesome.[3] The provision has come to mean something different from a mere technical merger,[4] but it is not necessary the transaction be a statutory merger.[5] As stated by Mr. Justice Douglas in a recent Supreme Court decision: "From the Pinellas case, Pinellas Ice & Cold Storage Co. v. Com'r of Internal Revenue, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, to the LeTulle case, LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355, it has been recognized that a transaction may not qualify as a 'reorganization' under the various revenue acts though the literal language of the statute is satisfied."[6] Helvering v. Alabama Asphaltic Limestone Co., 62 S.Ct. 540, 542, 86 L.Ed. ——, decided February 2, 1942.

The limitation on the literal language imposed by the Pinellas case, supra, to which Mr. Justice Douglas referred is the

---

[1] "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place or organization, however effected." § 12 (i) (1) of Revenue Act of 1932, 26 U.S.C.A.Int.Rev. Acts, page 513.

[2] Revenue Act of 1921, § 202(c) (2), 42 Stat. 229.

[3] "The so-called 'reorganization provisions' * * * are among the most complicated on the federal statute books today. Experts have been combing over them for ten years, but are still unable to prophesy definitely what the courts will hold as to some of the situations." Hendricks, Federal Income Tax: Definitions of "Reorganization", 45 Harvard Law Review 648, 649.

[4] Defined in State v. Atlantic Coast Line R. Co., 202 Ala. 558, 560, 81 So. 60, 62; Cortland Specialty Co. v. Com'r, 2 Cir., 60 F.2d 937, certiorari denied 288 U.S. 599, 53 S.Ct. 316, 77 L.Ed. 975; Paul, Studies in Federal Taxation, 3d Series, 60–62; Thompson on Corporations, 3d Ed. 1927, § 396; 13 Fletcher, Cyclopedia of Corporations § 7041; Hendricks, Developments in the Taxation of Reorganizations, 34 Columbia Law Review 1198, 1199.

[5] This requirement was added by the Revenue Act of 1934, § 112(g) (1), 26 U. S.C.A. Int.Rev.Acts page 695. See Hills, Definition of "Reorganization" Under the Revenue Act of 1934, 12 Tax Mag. 411, 412. The amendment was prospective only and is to be accorded no retroactive effect. See Girard Investment Co. v. Com'r, 3 Cir., 122 F.2d 843, and authorities there cited in footnote 20.

[6] "Courts have displayed considerable firmness in holding that a realization of gain from a reorganization has occurred unless the transaction falls squarely within the spirit as well as the letter of the statutory exceptions." Magill, Taxable Income, 124, 125.

"continuity of interest" rule. Under this rule, which sprung from Cortland Specialty Co. v. Com'r,[7] it was held that a sale of all a corporation's assets for cash was not a reorganization even though it was "the acquisition by one corporation of * * * substantially all the properties of another corporation." A requirement was laid down that a reorganization occurred only when there was a continuity of interest of the shareholders of the transferor in the assets or stock turned over to the transferee.[8] It might be argued that the continuity of interest remained unbroken here because the stockholders of UESCO were in control of the assets of NECAP both at the beginning and at the end of the transaction. But the rule demands something more. There was no transfer of stock or any proprietary interest from UESCO to NECAP. In fact NECAP received nothing but its own stock for cancellation. It has been held that if the transferor merely acquired bonds of a transferee and becomes a creditor, there is no reorganization because the transferor had not acquired a proper interest in the transferee.[9] It would seem, a fortiori, that when the transferor (NECAP) receives nothing but its own stock for cancellation, it has not acquired the interest in the transferee (UESCO) necessary to constitute a reorganization.

One commentator has discussed this very situation:

"In order to have a reorganization under part (A) of the definition, must the acquiring corporation issue some of its own stock or securities for the stock or the properties of the other corporation? * * *

"The view of the writer is: (1) The close association of the parenthetical phrase ('acquisition by one corporation of * * * substantially all the properties of another corporation') with 'merger or consolidation' is significant; while the parenthetical words enlarge on the meaning of 'merger or consolidation', they do not do so to the extent of making a mere purchase a reorganization. (2) The related exchange provisions of the law clearly show that it is contemplated that at least part of the consideration shall consist of stock or securities issued by the acquiring corporation. (3) Under the first definition of reorganization, in the Revenue Act of 1921, it was necessary that stock or securities be issued; subsequent acts intended no change in this respect."

Hendricks, Federal Income Tax: Definition of "Reorganization", 45 Harvard Law Review 648, 657–660.

This scholarly approach seems sound to the writer and is the one which has been adopted by the Board of Tax Appeals, in litigation similar to the present.[10] In discussing the absorption by the parent of the assets of the subsidiary in consideration of the surrender of the stock of the subsidiary for cancellation the Board has said: "There was not a statutory reorganization, but quite the reverse, for instead of acquiring all the Bascom Co.'s [the subsidiary's] property in a transaction which partakes of a merger or consolidation, * * * it [the parent] acquired it in a transaction which completely separated the two corporations." France Co. v. Com'r, 29 B.T.A. 661, 664.

■ We are quite convinced then that a liquidation of a subsidiary and absorption of its assets by the parent is not a "merger or consolidation" within the meaning of Section 112(i) of the Revenue Act of 1932. The transfer of bonds was therefore not tax exempt under Section 724 of the Revenue Act of 1932.

Judgment for the defendant.

---

[7] 2 Cir., 60 F.2d 937, 939.

[8] Hendricks, Developments In the Taxation of Reorganizations, 34 Columbia Law Review 1198; Continuity of Interest in Reorganization Under the Federal Income Tax, 49 Yale Law Journal 1079.

[9] Le Tulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355.

[10] Warner Co. v. Com'r, 26 B.T.A. 1225 approved in Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309; Simms Petroleum Co. v. Com'r, 28 B.T.A. 1107, 1125; France Co. v. Com'r, 29 B.T.A. 661, affirmed 6 Cir., 88 F.2d 917, certiorari denied 302 U.S. 699, 58 S.Ct. 18, 82 L.Ed. 540.