William H. ELLIS, Plaintiff-Appellee,

v.

STATE NATIONAL BANK OF ALA-
BAMA et al., Defendants-
Appellants.

The AMERICAN NATIONAL BANK OF
GADSDEN et al., Plaintiffs-Appellees,

v.

CENTRAL BANK AND TRUST COM-
PANY et al., Defendants-Appellants.

No. 28452.

United States Court of Appeals,
Fifth Circuit.

Oct. 28, 1970.

Rehearing Denied and Rehearing En
Banc Denied Dec. 29, 1970.

Julian Harris, Norman H. Harris, Decatur, Ala., Sam W. Pipes, Mobile, Ala., Schuyler A. Baker, S. Eason Balch, James H. Hancock, Birmingham, Ala., for defendants-appellants.

James A. Simpson, Robert McDavid Smith, James E. Simpson, William G. Somerville, Jr., Birmingham, Ala., for plaintiffs-appellees.

Truman Hobbs, MacDonald Gallion, Atty. Gen. of Ala., David W. Clark, Asst. Atty. Gen., Montgomery, Ala., for other interested parties.

Before SIMPSON, MORGAN and INGRAHAM, Circuit Judges.

SIMPSON, Circuit Judge:

State National Bank of Alabama (State National) is a national banking association organized under the laws of the United States with its principal place of business in Decatur, Alabama. Central Bank and Trust Company (Central) is a state banking corporation organized under the laws of the State of Alabama with its principal office in Birmingham, Alabama. This litigation was generated when the banks sought to merge State National with Central under Central's state charter.

William Ellis, a stockholder of State National, brought a shareholder's derivative suit seeking to block the proposed merger. In a separate suit, The First National Bank of Birmingham and seven other banks [1] also sought to prevent the merger. Both actions were filed in the Northern District of Alabama. They were consolidated. The parties sought a

declaration of (1) whether the proposed merger violated federal banking laws contained in Title 12, U.S.C., Sections 214–214c, (2) whether the branch banking laws of Alabama would be violated by the proposed merger, and (3) whether the proposed merger violated the federal antitrust laws.

In the trial below, the first two issues were separated for trial. The antitrust question was not considered. Since all the relevant facts were stipulated, we deal, as did the court below, with legal issues only. The trial court, in its order, found that the merger was invalid because it violated federal law, and thereupon found it unnecessary to decide the branch banking issue. We affirm.

The ultimate determination of this case rests upon an examination and interpretation of the interplay between federal and Alabama statutes. Under the provisions of Title 12, U.S.C., Sections 214–214c, Congress has authorized national banks to merge into state banks if state law is not contravened and if state banks in the particular state can "without approval by any State authority *convert into and merge or consolidate with* national banking associations under limitations or conditions no more restrictive than those contained in Section 214a". (Emphasis added).

The undisputed purpose of these statutes which were first enacted in 1950, is to promote equality between the federal and state banking systems. Prior to this legislation state banks could convert into or consolidate with national banks but there was no corollary and corresponding provision allowing national banks to convert into or consolidate with state banks. Congress attempted to rectify this inequity by permitting national banks to join state systems with the proviso that such transfers were permissible only to the extent that state banks could freely move into the national system.

[1]. Four of the eight banks are located in Birmingham and compete with Central. The other four banks are located in a North Alabama county in which State National maintains a branch office.

Under 5 Alabama Code, Sections 181–184, any state bank is allowed to "convert into" or "consolidate with" a national bank without approval of the State Banking Superintendent. Clearly if the appellant national bank desired to convert into or consolidate with an Alabama state bank it could do so without controversy. It is crucial to note that the Alabama statute makes no specific reference to mergers with national banks. Merger is dealt with in Title 5 Alabama Code, Sections 170–175, which pertain to any bank doing business in the state of Alabama. These statutes require approval of a merger by the State Banking Superintendent. The district court thus concluded:

> "The language used by Congress throughout the statute is inducive in construing the statute to mean, that unless a State bank can convert into, merge with and consolidate with a national bank without State approval, then a national bank can convert into, merge with and consolidate with a State bank. *In other words, if a national bank and a State bank wish to merge, with the surviving bank to be the State bank, the law of the State where the national bank is located must allow a State bank to merge with a national bank without approval of any State authority.* Under existing Alabama law, this cannot be accomplished. This construction certainly is the most logical in light of the Congressional intent to keep the national and state banking systems on an equal level of operation as illustrated by the legislative history of Section 214c." (Emphasis added).

### I.

#### Federal Law

A. *"And-or"*

Title 12, U.S.C., Section 214c states in part: "no such conversion, merger or consolidation shall take place * * * unless *, * * * State banks may without approval by any State authority *convert into and merge or consolidate* with national banking systems". (Emphasis added)

The appellants rely on the common rubric of statutory construction that a statute is open to construction only when the language used in the statute is ambiguous. The appellants assert that there is no ambiguity in the statute and that it is open to a single meaning only. The appellants argue that Congress made its intent crystal clear by using the conjunctive "and" between convert into and merge and the disjunctive "or" between merge and consolidate with. The appellants urge that by using the words "and"-"or" in such a precise manner Congress unquestionably meant to require that state law must provide for an unfettered transfer of a state bank to a national bank in two instances: conversion and corporate combination (either a merger or a consolidation). The appellants' ultimate contention is that the district court erroneously construed the statute to require three reciprocal transfer provisions; i. e. conversion, consolidation, *and merger*.

If the appellants' position is accepted, the district court must be reversed because the applicable Alabama law, Title 5, Alabama Code, Sections 181–184, clearly permits corporate combination. The statutes provide for the unfettered transfer of a state bank into the national banking system and consolidation (a form of corporate combination) with a national bank.[2]

Study of the statute convinces us that the meaning of the statute cannot be gleaned from the simplistic but rigid device of grammatical construction, parsing or classification. We disagree that the wording is so clear as to preclude the necessity of judicial interpretation

---

**2.** To facilitate discussion, this opinion will frequently refer to "national to state" or "state to national" transfers. Use of these phrases is intended as shorthand terminology describing on the one hand the movement of a national bank to the state system, or on the other hand the transfer of a state bank to the national system.

of the state. We are convinced that resort must be had to the legislative history to determine Congressional intent and the real meaning of the statute.

The appellants make much of the fact that the "and-or" phraseology is used only once in the entire statutory scheme. Section 214a authorizes a national bank to convert into *or* merge *or* consolidate with a state bank. The appellants suggest that the disjunctive "or" in Section 214a is deliberately used so as to authorize national to state transfers by any of the three methods. In like manner the appellants reason that the "ors" contained in Section 214a(a) and Section 214a(b) are deliberately used so as to give the statute operative effect.

The appellants logically contend that the exclusive use of the "and-or" language in 214c is no less deliberate. The phraseology in 214c describes the conditions that state law must meet in order for a national bank to transfer into the state system. Appellants' theory is that Congress by the use of the precise words "and-or" is specifying that in order for the state to comply with the terms of the statute the state law must provide authority for the unrestricted transfer of a state bank into a national bank by way of conversion and *either* consolidation *or* merger. The final effect of the appellants' analysis is that the separate terms, "merger" and "consolidation", are used in Section 214c as mere synonyms to connote a generic concept of corporate combination.

We do not agree that Congress used its "ands" and "ors" in the rigid manner suggested by the appellants. In the Act's title and in the committee reports, the words "and" and "or" are used in random fashion. For example the Act's title, as reprinted in 1950 U.S.Code Cong.Serv., p. 462, reads:

"An act to provide for the conversion of national banking associations into *and* their merger *or* consolidation with State banks, and for other purposes." (Emphasis added).

The significance of the language is that the title describes essentially what is contained in Section 214a. The appellants, as previously stated, contend that the disjunctive "or" is essential to the meaning of Section 214a. Yet Congress, when describing the Act used the same "and-or" language which the appellants assert is unique to and used with specificity in Section 214c.

In the introductory paragraph of the Senate Committee Report[3] the words "and"-"or" are used to describe national to state transfer, the subject matter of Section 214a. Conversely, the same report when addressing itself to the subject matter of Section 214c (state to national transfers) uses the phrase "convert into, *or* merge *or* consolidate". (Emphasis added).

These illustrations adequately demonstrate that Congress had no deliberate design in using "and" or "or" in the statute. Thus we must reject the appellants' theory. The "and-or" language in Section 214c does not dictate the conclusion that Congress intended to use the terms, merger and consolidation, simply as synonyms. Such conclusion can only be reached, if at all, after careful review of the legislative history.

**B.** *Congressional Intent*

The interpretative artillery is drawn forth and a bitter battle is waged by the parties as to the intent of Congress. As might be expected the issue is sometimes clouded by extraneous firepower. It is interesting to observe the tactical switch of the parties.

The appellants, who were repelled at the possibility that Congress might have used the words "and"-"or" without deliberate thought, now suggest that Congress had no concrete concept of the technical differences between consolidation and merger. They urge rather that Congress used the words interchangea-

---

3. Senate Report No. 1104, Senate Committee on Banking & Currency, 81st    Cong., 2d Sess. (Sept. 23, 1949; 1950 U.S.Code Cong.Service, p. 3012).

bly, as synonyms, to connote the generic concept of corporate combination. The appellees, who hinted that the "and-or" language might have been a slip of the pen, now argue that when Congress used the words merge and consolidate, it meant merge and consolidate in the technical sense.

In spite of the numerous arguments advanced by the appellants, their case must rest or fall on the validity of two assertions: (1) that Congress by its 1933 amendment (subsection B. 1., infra) made it clear that Congress was using the words merger and consolidation to connote a generic meaning of corporate combination; and (2) the 1952 addition, Title 12, U.S.C., 215a, was designed solely to give different treatment to dissenting shareholders in the merger situation and was not a recognition of the technical differences between consolidation and merger. We proceed to a study of these contentions.

### 1. *The 1933 Amendment*

■ In 1913, Congress enacted the predecessor of Title 12, U.S.C., Section 354 [4] which permitted state to national conversions. In 1927, Congress enacted legislation which provided for state to national consolidations.[5] In 1933, Congress amended the 1927 statute to provide: [6]

"* * * Upon such a consolidation * * * the corporate existence of each of the constituent banks and national banking associations participating in such consolidation shall be *merged* into and *continued* in the consolidated national banking association and the consolidated association *shall be deemed to be the same corporation as each of the constituent institutions.*" (Emphasis supplied).

The appellants suggest that this amendment *recognizes and allows state*

banks to merge with national banks even though the amendment is addressed to the problem of consolidation. The appellants reach this conclusion by pointing out the essential characteristics of a consolidation and of a merger. Oversimplified, a consolidation results in the formation of a new corporation while in a merger at least one of the constituents retains its identity. The appellants reason that by providing for the continuance of the corporate entity of the transferring bank the Congress was recognizing the equivalence of merger and consolidation. We disagree.

The 1933 amendment was not intended to and does not eliminate the distinction between merger and consolidation. The statutory language relied on bears no resemblance to the attributes of either a merger or a consolidation. The language refers to the corporate existence for a limited purpose of all constituents, while in a merger the separate entity of one constituent is retained for all purposes and in consolidation the separate identity of neither is retained. A reading of the statute reveals that the limited purpose of the language in question is merely to "secure the continuing efficacy of previous fiduciary appointments of each of the constituent banks". Commissioner of Internal Revenue v. Morris Trust, 4 Cir. 1963, 367 F.2d 794, 801. In sum, we reject the appellants' theory that Congress intended by its 1933 amendment to provide for merger of state banks with national banks. We cannot accept appellants' reading of the statute. It is too broad.

### 2. *Section 215a*

■ The appellants glean solace from the fact that when Sections 214–214c were enacted there was no specific corresponding statute permitting state to national mergers. They suggest that it would be unthinkable to conclude that

---

4. 38 Stat. 258.

5. 44 Stat. 1225, originally codified as 12 U.S.C. § 34a, modified in 1959 and recodified as 12 U.S.C. § 215.

6. 48 Stat. 190, amending what was originally codified as 12 U.S.C. § 34a.

Congress meant to provide for conversion, merger, and consolidation in the national to state context while allowing only conversion and consolidation in state to national transfers.

They urge that such a construction would violate the express purpose of Sections 214–214c, i. e. to provide equality between the two banking systems. The appellants reason that this glaring inequity can only be reconciled by inferring that Congress in Sections 214–214c was using the terms, merger and consolidation, to describe the same thing, corporate combination. We believe that the legislative history reveals a likelier explanation.

Under the current statutory scheme, there are two distinct statutes pertaining to consolidation (12 U.S.C., § 215) and merger (12 U.S.C., § 215a). Although the merger statute was not passed until the next Congress after the enactment of Sections 214–214c, there is merit to the appellee's suggestion that Sections 214–214c and 215a were part of the same legislative package and that passage of 215a was inexplicably delayed until 1952.[7] The slowness of the legislative process could provide a simple explanation for the alleged inequity between the two systems.

In any event, our holding is not dependent upon such a determination. Sections 215 and 215a cannot be reconciled by the synonym theory of the appellants. It is unlikely that Congress would enact separate statutes to describe mere synonyms. Comparison of the statutes confirms this thought.

Section 215a appears in Title 12, U.S. Code, with the title *"Merger of national banks or State banks into national banks"*. It provides for a technical merger through its specific provision that:

"(a) One or more national banking associations or one or more State banks, with the approval of the Comptroller, * * * *may merge into a national banking association* located within the same State, under the charter of the receiving association." (Emphasis added).

"Receiving association" is defined by § 215b as "the national banking association into which one or more national banking associations or one or more State banks, located within the same State, merge". Throughout the six subsections of § 215a Congress selectively has used only the term "merge" and its derivatives; the word "consolidate" is not to be found.

Section 215 is titled in the U.S.Code as *"Consolidation of national banks or State banks with national banks"*. It provides for a technical consolidation:

"(a) Any national banking association or any bank incorporated under the laws of any State may, with the approval of the Comptroller *be consolidated with* one or more national banking associations located in the same State under the charter of *a national banking association * * "* (Emphasis added).

The term "consolidate" and similar words indicate to us a knowledgeable and selective use. In Sections 215 and 215a Congress has provided separately for merger and consolidation in language which leaves little vitality for appellants' synonym theory.

Leaving aside the literal language of the statutes, the legislative history is highly supportive of our conclusion that Congress intended and advisedly used

---

7. Mr. L. A. Jennings, First Deputy Comptroller of Currency thus stated in his testimony in support of the merger statute in hearings before the House Committee on Banking & Currency (Miscellaneous Hearings, Committee on Banking and Currency, House of Representatives, 82nd Cong., on S. 2128 (Document No. 91117), at p. 104):

"And we must recognize that the *companion measure*, called the two-way street measure, now makes it rather easy for national banks to convert into State institutions". (Emphasis supplied).

the terms consolidation and merger in their strict technical sense. The Report of the Committee on Banking and Currency, House Report No. 2421, 1952, U.S. Code Cong. and Adm.News, Vol. 2, p. 2133, states in pertinent part:

"Section 1 of the act of November 7, 1918, as amended (12 U.S.C. 33), provides a method whereby two or more national banks may consolidate into one bank under the charter of one of the existing banks. Section 3 of the same act, as added (12 U.S.C. 34a), provides a method whereby a State bank may consolidate with a national bank under the Federal charter of the national bank. *There are no Federal statutes providing for the merger of national banks or the merger of State banks with national banks under Federal charter.*

\*      \*      \*      \*      \*      \*

"These *merger* provisions would be added to the present provisions of the act of November 7, 1918, as amended, which provide for consolidations, and would leave in existence without change that method of combining. *In either a case of consolidation under the existing statute or merger under the proposed bill,* the approval of the Comptroller of the Currency would have to be obtained. Hence there would be an administrative determination in each case as to whether a particular combination should be under the consolidation or merger provisions of the statute". (Emphasis added).

Mr. Jennings, First Deputy Comptroller of Currency, who testified before the Committee stated in part: [8]

"As you are probably aware, at the present time *consolidations of two national banks, or a State bank and a national bank, are permitted and have been for many years,* on a basis where the holders of two-thirds of the shares of each bank must sanction the proposed consolidation, and at the same time, if there are any dissenting shareholders, they are given the right to dissent and their stock must be appraised and they may receive cash for the stock.

"Now, that type of consolidation, over the years, has worked out very well, *but during recent years several of the States have passed laws which provide for so-called mergers of two institutions.*

"*Now, fundamentally, there is no difference between a consolidation and a merger. The technical form is exactly the same.* The two banks, in effect, *merge or consolidate.* \*  \*  \* " (Emphasis added).

These statements clearly reveal that there was no prior federal law on state to national mergers and federal legislation was necessary to equalize the possibilities of transfer between the two systems. It is clear that § 215a was passed with the clear intent to authorize for the first time state to national mergers and not merely to provide different rights to dissenting merger shareholders as suggested by the appellants.

■ In sum, we conclude that the trial court's analysis of the federal law was correct. A national bank may not merge with an Alabama state bank under the state bank's charter unless that state allows an unfettered merger between a state bank and a national bank under the national bank's charter. An examination of Alabama's bank merger laws is thus necessary.

## II.

### *Alabama Law*

■ As related earlier, the first federal legislation permitting state to national transfers was enacted in 1913. In 1915, Alabama responded to the federal legislation of 1913 by enacting a statute which provided state authority for a state to national conversion. This was the predecessor to Title 5, Alabama, Code, Section 181. In 1927, Congress enacted legislation permitting state to

8. Id.

national consolidation. Again Alabama responded with complementary legislation. In 1931, it enacted an amendment to its 1915 law, so that Alabama permitted both state to national conversions and consolidations without the approval of any state authority. This is now codified as Sections 181–184 of Title 5. It has not been changed since 1931.[9]

Appellants, nonetheless, submit that the Alabama legislature in its wisdom in 1931 anticipated the 1950 change in federal law. We find no indicia demonstrating such prescience.

The appellants argue that the following language of 5 Alabama Code, Section 184:

"Upon such conversion or consolidation becoming effective, the national banking association shall be deemed *to be a continuation of the entity and of the identity of the state banking corporation*"

provides for the same result following a state to national combination as described in *all* the national banking laws authorizing combination of banks between the two banking systems. The appellants quote too little. The full text of the relevant portion of Section 184 reads:

"§ *184. Continuation of entity, obligation, etc.*—Upon such conversion or consolidation becoming effective, the national banking association shall be deemed *to be a continuation of the entity and of the identity of the state banking corporation* or trust company and all the rights, obligations and relations of the state banking corporation or trust company to or in respect to any person, estate, creditor, depositor, trustee or beneficiary of any trust, and in, or in respect to, any executorship or trusteeship or other trust or fiduciary function, shall remain unimpaired, and the national

banking association as of the time of the taking effect of such change or consolidation shall succeed to all such rights, obligations, relations and trusts, and the duties and liabilities connected therewith, and shall execute and perform each and every such trust or relation in the same manner as if the national banking association had itself assumed the trust of relation, including the obligations and liabilities connected therewith".

The language of Section 184 is strikingly similar to that used in the federal amendment of 1933 discussed in Part I of this opinion. We think the same conclusion must be reached. The provision relating to the continuance of the corporate entity is designed to preserve intact the duties as fiduciaries of the combining banks. It cannot be strained to provide a missing definition of corporate merger.

Failing that argument, the appellants resurrect their synonym theory discussed with reference to the federal statutes and attempt to apply it to the Alabama statute. The appellants argue that in other dissimilar pre-1931 statutes the Alabama legislature used the words consolidation and merger interchangeably and not in the strict legal sense.

The appellants rely heavily on an Alabama Supreme Court case, State v. Atlantic Coast Line R. Co., 202 Ala. 558, 81 So. 60 (1918) *to support this position.* That case stated:

"Accurate logicians very ' properly distinguish between the meanings of 'consolidation' and 'merger'. Strictly speaking, a consolidation means the unifying of two or more corporations into a *single new corporation,* having the combined capital, franchises, and powers of all of its constituents. And, strictly speaking, a merger means the

---

9. We find it significant that 36 states have enacted reciprocal state legislation since the change in the federal laws in 1950. New York, for example, N. Y. Banking Law § 137, prior to 1950 had permitted conversions or consolidations of state banks into national banks. Subsequent to 1950, New York passed reciprocal legislation permitting state to national mergers.

'absorption' of one corporation by another, which retains its name and corporate identity, with the added capital, franchises, and powers of the merged corporation. Alabama, T. & N. R. R. Co. v. Tolman, 200 Ala. 449, 76 So. 381; note 89 Am.St.Rep. 607; Noyes on Intercorporate Relations, §§ 7–11.

"For most purposes, however, and apart from mere questions of identity, the result is in each case practically the same; and so it is that courts and text-writers have usually used the terms 'consolidation' and 'merger' interchangeably, and, in cases of doubt, conjunctively, to express the idea of complete corporate union, whether a new corporation nominally results or whether a constituent corporation is nominally preserved". 81 So. at page 62.

The above quote recognizes that "courts and text-writers" have used the terms interchangeably, but it does not posit that the Alabama legislature has used the terms in a like manner. A reading of the case reveals that the court concluded that where the legislature used the term, consolidation, in a statute it meant consolidation and not merger. Other courts when construing Alabama statutes using the terms consolidation and merger have likewise declined to hold that the terms were mere synonyms. See Alabama, T. & N. Ry. v. Tolman, 200 Ala. 449, 452, 76 So. 381 (1917) and Alabama Power Company v. McNinch, 1937, 68 App.D.C. 132, 94 F.2d 601.

We find no support in decided cases for the assertion that the Alabama legislature has traditionally used the terms, consolidation and merger, interchangeably. We find no reason to infer that the legislature meant to use the terms as synonyms when it enacted Sections 181–184. We conclude that Sections 181–184 of 5 Alabama Code do not provide for the unfettered merger of a state bank with a national bank under the latter's charter. The Alabama legislature through either design or neglect has failed to respond to the Federal merger provisions enacted in 1950. Since Sections 171–175 of 5 Alabama Code permit bank mergers only with the express approval of the State Banking Superintendent, we are clear in the conclusion that the merger sought here is violative of Federal law.

■ Our determination is not altered by the Alabama Attorney General's letter-opinion to the Superintendent of Banks of the State of Alabama dated September 30, 1968, concluding that the conditions set out in Title 12, U.S.C., § 214c, have been satisfied by Alabama law and that there is no legal impediment to the transfer of State National into Central under the charter of Central. The appellants argue that we should rely on this opinion as a definitive statement of the Alabama law as this Court did with respect to Florida law in Dickinson v. First National Bank in Plant City, 5 Cir. 1968, 400 F.2d 548, 557, affirmed 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969). It is well recognized that state attorney general opinions are advisory in nature. Alabama is no exception. Holcombe v. Mobile County, 26 Ala.App. 151, 155 So. 638 (1934). Such opinions are often strongly persuasive. We find that the attorney general's opinion relied upon here falls short of a definitive statement of Alabama law because it gives no reasons for the bald statement that the proposed merger is not violative of state or federal law. Our analysis convinces us to the contrary.

We affirm the district court's determination that the proposed merger is violative of federal law because under Alabama law a state to national merger must be approved by a state official. Since we find that the district court was correct in determining that the merger was defective we need not consider the second ground for the district

court's decision that the state law was more restrictive than the federal law.[10]

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

10. Expressed in the district court's opinion, without elaboration, as follows:
    "Moreover, the State law as to notice to stockholders and as to the rights of dissenting stockholders are (sic) more rigid and restrictive in perfecting the merger than Section 214a, although the notice discrepancy is probably inconse-quential. Title 10, Section 21(73) of the Alabama Code".